## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Immunomedics, Inc.,

               Plaintiff,

       v.

venBio Select Advisor LLC, Behzad Aghazadeh,
Scott Canute, Peter Barton Hutt, and Khalid
Islam,

               Defendants.

C.A. No. _____

## PLAINTIFF IMMUNOMEDICS, INC.'S COMPLAINT

Plaintiff Immunomedics, Inc. ("Immunomedics" or the "Company"), for its complaint against Defendants venBio Select Advisor LLC ("venBio"), Behzad Aghazadeh, Scott Canute, Peter Barton Hutt, and Khalid Islam (the "Dissident Candidates" and collectively with venBio "Defendants"), by and through its undersigned counsel, alleges, upon personal knowledge as to itself, and upon information and belief as to all other matters, the following:

## NATURE OF THE ACTION

1.     venBio is running an illegal proxy contest in an effort to take control of the Board of Directors (the "Board") of Immunomedics.  During its unlawful proxy fight, venBio has flouted the federal securities laws—particularly the proxy rules—and has irreparably harmed the Company and its stockholders as well as the stockholder voting franchise.

2.     *First*, venBio violated Regulation 13D by failing to file a Schedule 13D with the Securities and Exchange Commission ("SEC") within 10 days after obtaining 5% ownership in Immunomedics' stock and forming an intent to exert influence and/or control over the Company.  Then, while its ownership and intentions were hidden by this unlawful non-disclosure, venBio

privately disclosed its material non-public intent to take over Immunomedics to select investors who bought Immunomedics stock while its price was depleted.  One of these investors is Orbimed Advisors LLC ("Orbimed"), which bought nearly 3.6% of Immunomedics' stock during this time period.  Once venBio finished secretly building an unlawful base of support against Immunomedics and a nearly 10% stake in the Company, it finally filed its initial Schedule 13D on November 16, 2016—more than *five months* after it became due.  venBio also ambushed Immunomedics the same day—only four weeks before the then-scheduled annual meeting date—with its preliminary proxy statement announcing its campaign to seek control of the Board at the Company's 2016 annual meeting (the "Annual Meeting").

3.      *Second*, after evading Regulation 13D to gain unlawful leverage over Immunomedics, venBio continued to deceive Immunomedics' stockholders by soliciting their proxies for the Annual Meeting through undisclosed group members.  In order to prevent shadow proxy contests controlled by undisclosed actors, Regulation 13D requires proxy solicitors to disclose all participants in a proxy campaign on their Schedule 13D filed with the SEC.  In direct violation of this requirement, venBio failed to disclose numerous members of its proxy solicitation group.  Immunomedics has learned that venBio's undisclosed group members include, at a minimum, Orbimed and groups of stockholders that have united on an online message board (the "Undisclosed Group Members").  Together, venBio and the Undisclosed Group Members control as much as 19% of Immunomedics' stock.  Immunomedics' other stockholders, however, have no idea that the Undisclosed Group Members are soliciting proxies as part of a proxy solicitation group with venBio.

4.      *Third*, venBio has, itself and through its Undisclosed Group Members, violated virtually every single one of the proxy solicitation rules (the "Proxy Rules") in order to trick stockholders into voting against Immunomedics' director candidates.  The Proxy Rules are meant to protect stockholders by ensuring they are in possession of timely, accurate and complete information from all parties to a contested director election.  venBio has completely ignored these rules in order to further game the outcome of the Annual Meeting.  It has, therefore, unfairly and irreparably influenced the voting decisions of Immunomedics' stockholders by, at a minimum:

- **Undisclosed Proxy Solicitation Materials:**  venBio has solicited proxies from stockholders in writing without disclosure of these written solicitations to the SEC, as required by SEC Rule 14a-6.  Immunomedics recently became aware, for example, of an email from venBio's principal—Behzad Aghazadeh—pasted into an online message board thread.  In the email, Mr. Aghazadeh clearly solicits votes from a shareholder who claims to control nearly six million shares of Immunomedics' stock, but this written communication was never filed with the SEC.  Immunomedics and its stockholders cannot quantify how many other violations of this type venBio has committed because venBio refuses to follow the Proxy Rules.

- **Baseless Character Assassinations:**  venBio has misled investors by, for example, repeatedly accusing Immunomedics' current Board—without any factual basis whatsoever—of "pad[ding] their pockets with stockholders' cash" and other "blatant and shameful" "self-serving actions" taken for the purpose of "enriching itself" "at the expense of stockholders' best interests."  To avoid misleading investors, SEC Rule 14a-9 expressly prohibits such accusations, unless they are supported by a clear factual basis, which venBio has not—and cannot—provide.

- **Unlawful Early Announcement of Voting Results:**  Three times in the past week alone, venBio has predicted the outcome of this proxy fight in press releases mailed to stockholders and filed with the SEC, as well as in court filings.  This is a clear-cut violation of one of the most sacrosanct of the Proxy Rules, which squarely prohibits reporting of voting results until after a company's annual meeting.

5.      *Fourth*, venBio has interfered, and continues to interfere, with Immunomedics' business.  Indeed, over the past ten days alone, venBio has been making covert contact with market analysts, pressuring them to undermine a transformative transaction between Immunomedics and Seattle Genetics, Inc. ("Seattle Genetics") by issuing public reports criticizing the deal and

supporting venBio's positions in the proxy contest.   venBio has also been contacting Immunomedics' clinical investigators, pressuring them to divulge confidential information about Immunomedics and to otherwise get their support for venBio's bid to take over the Company.

6.      In light of the foregoing, Immunomedics has been forced to bring this lawsuit asking for declaratory and injunctive relief (1) invalidating all proxies and votes solicited by venBio and its proxy solicitation group, (2) mandating corrective disclosures by venBio, and (3) restraining further violations of the federal securities laws, including the Proxy Rules.  Immunomedics also seeks injunctive relief to prevent additional acts of tortious interference by venBio with Immunomedics' business and business relations.  These remedies are necessary, in order to protect Immunomedics' stockholders, the stockholder voting franchise, and the Company from further irreparable harm.

## THE PARTIES

7.      Plaintiff Immunomedics is a clinical-stage biopharmaceutical company developing monoclonal antibody-based products for the targeted treatment of cancer, autoimmune disorders and other serious diseases.  Using various technologies, Immunomedics has built a pipeline of eight clinical-stage product candidates.  Immunomedics was incorporated in 1982 and is listed on the NASDAQ Stock Exchange under the ticker symbol "IMMU."   Immunomedics is a Delaware corporation and maintains a business address at 300 The American Road, Morris Plains, New Jersey 07950.

8.      Defendant venBio is a Delaware limited liability company and an SEC registered investment manager.  The investment and business operations for venBio are based in New York, where it maintains a business address at 120 West 45th Street, Suite 2802, New York, NY 10036.

9.      Defendant Behzad Aghazadeh maintains a business address at 120 W. 45th Street, 28th Fl., New York, NY 10036, he is a principal of venBio and has participated in venBio's solicitation of proxies from Immunomedics' stockholders.

10.    Defendant Scott Canute maintains a business address at c/o Oncobiologics, Inc., 7 Clarke Dr., Cranbury, NJ 08512, he entered into a nominee agreement with venBio agreeing to serve as one of venBio's nominees to the Immunomedics' Board and, on information and belief, has participated in venBio's solicitation of proxies from Immunomedics' stockholders.

11.    Defendant Peter Barton Hutt maintains a business address at c/o Covington & Burling LLP, One CityCenter, 850 Tenth Street, NW, Washington, DC 20001-4956, he entered into a nominee agreement with venBio agreeing to serve as one of venBio's nominees to the Immunomedics' Board and, on information and belief, has participated in venBio's solicitation of proxies from Immunomedics' stockholders.

12.    Defendant Khalid Islam maintains a business address at Life Sciences, Management GmbH, C/O Financial Consulting & Accounting Group GmbH, Flurstrasse 1, 6332 Hagendorn (Zug), Switzerland, he entered into a nominee agreement with venBio agreeing to serve as one of venBio's nominees to the Immunomedics' Board and, on information and belief, has participated in venBio's solicitation of proxies from Immunomedics' stockholders.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over the subject matter of this action based on 28 U.S.C. §§ 1331 and 2201, Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") 15 U.S.C. § 78aa, and Sections 13(d) and 14(a) of the Exchange Act, 15 U.S.C. §§ 78m(d), 78n(a) and the rules and regulations promulgated thereunder.

14.    Venue in this district is proper pursuant to 28 U.S.C. § 1391 and Section 27 of the Exchange Act 15 U.S.C. § 78aa, because the proxy contest at issue in this case is between a Delaware corporation and a Delaware limited liability company.

15.    Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201 because an actual controversy exists regarding the propriety of venBio's statements and disclosures under the

Exchange Act and the rules and regulations promulgated thereunder (collectively, the "SEC Rules").

## STATEMENT OF CLAIMS

### *venBio unlawfully ignored its Regulation 13D disclosure obligations in a calculated attempt to ambush Immunomedics  and its investors with venBio's plan to take over the Board of Immunomedics*

16.     Under Section 13(d)(1) of the Exchange Act and Regulation 13D promulgated thereunder, any investor who owns at least 5% of a class of stock must file a Schedule 13D with the SEC within 10 days of acquiring that interest.  Schedule 13D requires the investor to reveal both the extent of his ownership and "any plans or proposals which [the investor] may have which relate to or would result in . . . [a]ny change in the present board of directors or management of the issuer."

17.     The Schedule 13D filing requirement prevents large stockholders from continuing to trade in a stock while concealing material information about that stock from the investing public and provides companies, and their investors, with a fair opportunity to respond to the plans of any large investor intending to upset the composition of a company's management or board.

18.     venBio's Preliminary Proxy Statement filed on November 16, 2016 (the "Preliminary Proxy Statement")[1] indicates that venBio has owned at least 5% of Immunomedics' common stock since June 1, 2016.  venBio has filed numerous Schedule 13Ds for other companies and was, therefore, aware that its ownership stake obligated it to file a Schedule 13D many months earlier.

19.     Moreover, venBio's recent public filings have made clear that venBio formed a hidden intent to seek control of the Board long before announcing that intention in a Schedule 13D.  For example, venBio's Preliminary Proxy Statement provides a number of events that resulted in its

---

[1]     venBio's     Preliminary     Proxy     Statement     is     publicly     available     online at: https://www.sec.gov/Archives/edgar/data/722830/000090266416008838/p16-2185prec14a.htm.

decision to challenge the composition of the Board, each of which occurred well before it filed its Schedule 13D, including: an industry event that occurred on June 3, 2016, an issuance by the Company made on October 4, 2016, and certain Board and employee changes occurring throughout October 2016.   And, tellingly, the Preliminary Proxy Statement concedes that the Dissident Directors had each already "entered into a nominee agreement" with venBio *before* the Preliminary Proxy Statement was issued.

20.     But, in an apparent attempt to surprise Immunomedics' other stockholders and the market with its attempt to take control of the Board and to continue to build its equity position in Immunomedics at a discounted price, venBio ignored its obligation to file a Schedule 13D.  Instead, venBio waited until November 16, 2016—more than five months after it obtained a 5% stake in Immunomedics' common stock.  At that point, it ambushed Immunomedics and the investing public by simultaneously filing its first-ever Immunomedics Schedule 13D[2] and its Preliminary Proxy Statement announcing its intent to wage a proxy contest for control of the Board.

21.     Moreover, upon information and belief, before filing its Schedule 13D, venBio shared its hidden intent to seek control of the Board with a select group of activist investors, including Orbimed, who used this material, non-public information to purchase Immunomedics' stock at a discounted price.

22.     This gamesmanship violates Section 13(d)(1) of the Exchange Act and Regulation 13D promulgated thereunder.

### *venBio has unlawfully concealed the complete membership of its proxy solicitation group from Immunomedics and the investing public*

23.     Under SEC Rule 13d-1, a person who acquires "beneficial ownership" of more than 5% of a class of stock must file a Schedule 13D or similar public disclosure.  And, under SEC Rule

---

[2]     venBio's   Schedule   13D   filed   on   November   16,   2016   is   publicly   available   online at: https://www.sec.gov/Archives/edgar/data/722830/000090266416008839/p16-2187sc13d.htm.

13d-5, when "two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership."  Where such a group is formed, SEC Rule 13d-1 obligates the members of the group to file either (1) a joint Schedule 13D on behalf of the entire group or (2) separate Schedule 13Ds on behalf of each individual group member.  If the members of the group decide to file separate Schedule 13Ds, SEC Rule 13d-1 requires "each such filing [to] identify all members of the group."

24.     venBio did not identify its membership in any such beneficial ownership groups when it filed its Schedule 13D, and it has failed to update its Schedule 13D to indicate any subsequent agreement to join such a group.

25.     But, Immunomedics has now learned that venBio has formed an undisclosed beneficial ownership group with a group of Immunomedics stockholders that communicate on an online message board about Immunomedics at www.SiliconInvestor.com (the "Message Board Group").

26.     The Message Board Group took shape in November 2016, when users of the Message Board began noting, for example, that "[t]here are enough votes on this board for someone to approach [venBio] on our behalf, [as] a representative of sorts for our group."  A Message Board user then asked a fellow Immunomedics stockholder on the Message Board to communicate on the Message Board Group's behalf, "indicating [he] speaks for [the Message Board members]" and "verify[ing] that [the Message Board members] are united."

27.     Then, on November 28, 2016, the group's newly appointed representative encouraged Message Board users to "email [him] with what you oversee and how many of those

shares you seeing voting for venBio's slate" because "[i]f [venBio] think[s] our cumulative vote is important, we might weld [(sic)] some power with it."

28.     Enough of the Message Board's members responded to that request that, on December 13, 2016, the group's representative announced: "I have 75 shareholders that have a total of 6,191,578 shares" that have joined the group.   At that total, the Message Board Group held approximately 5.8% of Immunomedics' outstanding shares of common stock.

29.     After this group formed, the group's representative announced that "Behzad [Aghazadeh had] emailed" him  "saying he had been reading the board and saw the concerns about venBio's intentions and direction . . . and [Mr. Aghazadeh] asked if [the Message Board Group's representative] wanted to get on a call with him with some follow up questions."   While describing that call in the same post, the representative made a pitch for the Dissident Candidates: "Behzad was candid as usual and I am totally satisfied that not only will I vote [for the Dissident Candidates], but I am enthused about the change and possibilities that the [Dissident Candidates may] bring[]."   The Message Board Group's representative then directed the members of the Message Board Group to "throw the [Company's] white [proxy card] away" and vote the gold proxy card of venBio.

30.     venBio also used the Message Board Group to facilitate communications between users of the Message Board and Okapi Partners, the proxy solicitation firm of venBio.  Indeed, on January 14, 2017, the group's representative went so far as to provide members of the Message Board Group with alternate contact details for Okapi Partners during a period of time when Okapi's primary toll free number was not working.

31.     It is thus clear that the Message Board Group has agreed, in the words of Rule 13d-5, to "act together" with venBio "for the purpose of . . . voting" Immunomedics stock.  But neither

venBio nor any members of the Message Board Group disclosed this arrangement in a Schedule 13D, depriving Immunomedics and its stockholders of fair context to evaluate the proxy contest being waged by this group.

32.     In addition, Immunomedics has reason to believe that venBio has formed an undisclosed beneficial ownership group with Orbimed.  Orbimed is an investment group and an investment advisor that owns approximately 3.59% of Immunomedics' common stock and claims to control "clients" "with substantial holdings of Immunomedics securities, totaling 3,802,000 shares of common stock and 30,000 convertible bonds, or approximately 9.13% of the Company's shares outstanding on a fully-converted basis as of December 31, 2016."

33.     Immunomedics has learned, through conversations with its stockholders, that venBio has been in regular communication with Orbimed during this proxy contest.  Indeed, on information and belief, before filing its Schedule 13D, venBio tipped Orbimed off to its secret plan to ambush Immunomedics and its stockholders with its proxy contest.  On information and belief, Orbimed and its "clients" then used this material non-public information to purchase a large block of shares of Immunomedics' stock at depleted prices.

34.     In exchange for this information, on information and belief, Orbimed and its "client" stockholders have agreed to hold their shares of Immunomedics stock and use their position as stockholders in the Company to influence the elections at Immunomedics' upcoming Annual Meeting in favor of the Dissident Candidates.

35.     Nevertheless, no public filing has been made disclosing the existence of a group relationship between venBio and Orbimed, or of any participant role for Orbimed in the solicitation of proxies for venBio.  Instead, venBio has deprived Immunomedics' other stockholders of their

right to know all members of its proxy solicitation group, just as it unlawfully hid its plan to seek control of the Board from those stockholders.

36.     Defendants' failure to identify venBio involvement with any ownership groups in its Schedule 13D violates SEC Rule 13d-1.

### *Despite failing to disclose its group relationship with the Message Board Group, venBio has used that group as a conduit for undisclosed, covert proxy solicitations, in violation of SEC Rule 14a-6*

37.     Section 14(a) of the Exchange Act and SEC Rule 14a-6 require all persons soliciting proxies to file with the SEC "all [] soliciting materials, in the same form as the materials [were] sent to security holders."  This rule ensures that proxy contests are conducted in the light of day, subject to the SEC rules and regulations that ensure a fair and open competition for board representation.

38.     But, in an attempt to gain an unfair advantage through unregulated proxy solicitations, venBio has used the Message Board Group as a covert conduit for the distribution of its proxy solicitation materials in support of the Dissident Candidates.

39.     For example, as described above, on January 13, 2017, a member of the Message Board Group reported on a telephone conversation he had with venBio's Behzad Aghazadeh after Mr. Aghazadeh "had been reading the board and saw the concerns about venBio's intentions and direction."  The Message Board Group member then effectively made venBio's proxy solicitation for Mr. Aghazadeh, noting: "Behzad was candid as usual and I am totally satisfied that not only will I vote [for the Dissident Candidates], but I am enthused about the change and possibilities that the [Dissident Candidates may] bring[]."

40.     The next day, the same Message Board user copied and pasted a proxy solicitation he had received by email from Mr. Aghazadeh, which states:

> I hope there is no doubt that our interests are aligned, but more importantly, I would only be 1 voice on the board, and all others

> are independent fiduciaries, and are required to conduct themselves
> in a manner that is in the best interest of all, and not just one . . .
> independent of the size of that one's holding, or position within the
> company.

41.     Similarly, on January 17, 2017, this Message Board Group member with a direct line of contact to venBio instructed members of the Message Board group that they "should call [Okapi Partners, the proxy solicitation firm of venBio] if they need to call someone, or [they] could e-mail Lydia at …@okapipartners.com."   Later, the representative told the group that "Okapi Partners [wa]s having some problems with their toll free number," but he provided an alternate number that Okapi Partners had given him and instructed stockholders to call that number "and ask for Lydia" if they needed information about the proxy contest.

42.     In violation of Section 14(a), none of these solicitations have been filed with the SEC.

43.     These solicitations are not exempt from the SEC's Proxy Rules under Rule 14a-2(b)(6)'s exemption for certain electronic communications.   That exemption only applies to electronic communications made by a "person who does not seek directly or indirectly, either on its own or another's behalf, the power to act as proxy for a shareholder."   Here, the Message Board Group's posts seek, on venBio and the Dissident Candidates' behalf, the power to act as a proxy for Immunomedics' stockholders.

44.     Similarly, on information and belief, venBio has used Orbimed as a covert conduit for proxy solicitation materials.   However, in violation of SEC Rule 14a-6, no such proxy solicitation materials have been filed with the SEC.

### *venBio's proxy materials are materially misleading, in violation of SEC Rule 14a-9*

45.     SEC Rule 14a-9(a) provides, among other things, that no solicitation:

. . . shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

46.     To assist in its enforcement, the text of SEC Rule 14a-9 includes express examples of statements that would be deemed misleading and, therefore, a violation of the Rule, including:

- "Material which directly or indirectly impugns character, integrity or personal reputation, or directly or indirectly makes charges concerning improper, illegal or immoral conduct or associations, without factual foundation;" and

- "Claims made prior to a meeting regarding the results of a solicitation."

47.     In conducting its proxy solicitation campaign, venBio has brazenly ignored this clear guidance and, as explained below, has repeatedly (1) made baseless attacks impugning the integrity of the current members of Immunomedics' Board, (2) lied outright to Immunomedics stockholders about the merits of the Dissident Candidates, and, most recently, (3) claimed that venBio's success at the upcoming Immunomedics stockholder election was certain.

48.     *First*, without offering any factual support whatsoever, venBio's proxy solicitation materials repeatedly attack the integrity of the current members of Immunomedics' Board by accusing them of self-dealing to enrich themselves at the expense of Immunomedics stockholders. Such statements include, but are not limited to, the following:

> The strategic failures and missteps that we believe are holding Immunomedics back include . . . the Company management team's ***self-enrichment at the expense of stockholders***.

November 22, 2016 venBio Press Release[3] (emphasis added).

> [T]he Company is simply perpetuating *the pattern of self-serving actions* and value destruction *that have characterized Immunomedics to date*.

November 29, 2016 venBio Press Release (emphasis added).

> We believe that decisive change is sorely needed to correct *the course of strategic missteps, mismanagement, and cronyism that has characterized the management and oversight of Immunomedics*.

January 18, 2017 venBio Press Release[4] (emphasis modified).

> The bottom line is that the slate of nominees proposed by Immunomedics represents the same *cronyism and lack of credibility that have characterized the Company's leadership to date*.

*Id.* (emphasis modified).

> This shared success across the organization is in stark contrast to the *self-enrichment policies characterizing how the current management and Board have operated*.

*Id.* (emphasis modified).

> *[T]he Board* has completely failed to act as a good fiduciary for all stockholders, and . . . *has focused solely on enriching itself*.

*Id.* (emphasis modified).

> After *decades of mismanagement and self-enrichment*, it is reprehensible for the Company to attempt to *hold stockholders hostage* to additional threats of how they have yet another means to *pad their pockets with stockholders' cash*.

January 30, 2017 venBio Press Release[5] (emphasis modified).

> Immunomedics' announcement of a deal with Seattle Genetics is *a blatant and shameful maneuver by the current Board and*

---

[3]   venBio's November 22, 2016 Press Release is publicly available online at: https://www.sec.gov/Archives/edgar/data/722830/000090266416008887/p16-2211dfan14a.htm.
[4]   venBio's January 18, 2017 Press Release is publicly available online at: https://www.sec.gov/Archives/edgar/data/722830/000090266417000247/p17-0173dfan14a.htm.
[5]   venBio's January 30, 2017 Press Release is publicly available online at: https://www.sec.gov/Archives/edgar/data/722830/000090266417000542/p17-0346dfan14a.htm.

> ***management*** to manipulate the outcome of the upcoming Annual Meeting and entrench themselves ***at the expense of stockholders' best interests***.

February 10, 2017 venBio Press Release[6] (emphasis added).

> The bottom line is that ***what the current Board says cannot be trusted, and their credibility with stockholders has long ago been squandered***.

*Id.* (emphasis added).

> Seattle Genetics appears to have aided and abetted ***the Board's breach of its fiduciary duties to stockholders*** by knowingly agreeing to ***a subpar transaction*** primarily designed to entrench the Board rather than deliver stockholder value.

*Id.* (emphasis added).

> venBio urges stockholders not to fall prey to the ***manipulative tactics of the current Board***.

*Id.* (emphasis added).

> Seattle Genetics appears to have aided and abetted ***the Board's breach of its fiduciary duties to stockholders by knowingly agreeing to a subpar transaction*** primarily designed to entrench the Board rather than deliver stockholder value.

February 14, 2017 venBio Press Release[7] (emphasis added).

49.     These accusations of illegal and immoral conduct by Immunomedics' Board and management are baseless and expressly prohibited by SEC Rule 14a-9.  They are highly material to the proxy contest because they greatly distort the true facts relevant to the proxy contest.

50.     *Second*, venBio's proxy solicitation materials contain several outright falsehoods designed to mislead the investing public into supporting the Dissident Candidates.  For example, venBio's February 14, 2017 press releases asserts:

---

[6]     venBio's   February   10,   2017   Press   Release   is   publicly   available   online at: https://www.sec.gov/Archives/edgar/data/722830/000090266417001034/p17-0700dfan14a.htm.

[7] venBio's   February   14,   2017   Press   Release   is   publicly   available   online   at: http://www.businesswire.com/news/home/20170214006044/en/venBio-Takes-Steps-Protect-Rights-Immunomedics-Stockholders.

> *In Unprecedented Move*, ALL Three Leading Proxy Advisory
> Firms – ISS, Glass Lewis and Egan Jones – Have Supported
> venBio's FULL Slate of Nominees

51.     But the claim that it is unprecedented for each of ISS, Glass Lewis and Egan Jones to support a dissident stockholder's full slate of directors is simply untrue.  For example, as even cursory internet research makes clear, each of the three advisory firms recently supported the full activist slate in the proxy contests involving (1) FBR & Co./Voce Capital, (2) Canadian Pacific Railway/Pershing Square and (3) Ultratech/Neuberger Berman.

52.     Calling the actions of the Proxy Advisory Firms "unprecedented" materially misleads investors about the qualifications of the venBio's slate of Dissident Candidates and is a clear violation of SEC Rule 14a-9.

53.     *Third*, as if its baseless attacks and blatant falsehoods throughout the proxy contest were not enough to mislead investors, in the past week venBio made repeated public statements unlawfully claiming to know the results of the upcoming Immunomedics stockholder election before it happened, including the following:

> [T]he current Board is rushing with the proposed transaction in an
> attempt to improve stockholders' perception of them and to reverse
> *the likely defeat they face at the Annual Meeting*.

February 10, 2017 venBio Press Release (emphasis added).

> As of [February 9, 2017], *venBio's Lead in the Stockholder Vote
> was Clear* – with 80% of Outstanding Shares Submitted and 55%
> of Those Cast in Favor of venBio's Nominees.

February 14, 2017 venBio Press Release (emphasis modified).

54.     These statements are highly misleading.  To start, the reported vote totals are inaccurate.  In addition, even if the totals were accurate, venBio's statements fail to disclose any information regarding the source of venBio's information regarding the vote tally, the nature of the votes remaining to be cast, the number of votes cast for or against or abstaining with respect to each

individual director, and the ability of stockholders to change their votes, particularly in light of the transformational licensing transaction with Seattle Genetics, announced by Immunomedics on February 10, 2017, which precipitated these statements.

55.     Such statements are materially misleading the investing public about the potential impact of their exercise of the stockholder franchise because they suggest that the outcome of a stockholder vote has already been determined.  They provide a textbook example of the reason that the SEC has expressly prohibited predictions of the outcomes of stockholder votes under Rule 14a-9.

56.     The confusion and misinformation of stockholders caused by venBio's violation of SEC Rule 14a-9 has irreparably harmed Immunomedics and its stockholders and may further injure the Company by improperly affecting the outcome of votes taken at its Annual Meeting.

### venBio has tortiously interfered with
### Immunomedics' business and contract with Seattle Genetics

57.     On February 10, 2017, Immunomedics announced that it had entered into an exclusive global licensing agreement with Seattle Genetics.  This transaction will have a transformative impact on the Company and has been welcomed by the investing public, as demonstrated by the more than 20% increase in Immunomedics' stock price that occurred following the deal's announcement.

58.     As its recent press releases show, Defendants have been aware of Immunomedics' contractual relationship with Seattle Genetics since it was announced, and have been aware that negotiations for such a transaction were ongoing for the past several months.

59.     But, precisely because the transaction has such a positive impact on the Company, and thus reflects well on the current Board's management, Defendants have engaged in numerous efforts to scuttle the transaction.

60.     For example, on information and belief, Defendants have been contacting research analysts covering Immunomedics.  On information and belief, Defendants have been pressuring these analysts to undermine the Seattle Genetics transaction by issuing public reports criticizing the Seattle Genetics transaction and supporting venBio's positions in the proxy contest.

61.     Also, on information and belief, Defendants have been covertly contacting Immunomedics' clinical investigators.  On information and belief, venBio has been pressuring these investigators to conspire with venBio by providing venBio with confidential information that would undermine the Seattle Genetics transaction and support venBio's unlawful proxy contest.

62.     There is no justification for this interference with Immunomedics' contract with Seattle Genetics.

63.     Any deprivation of Immunomedics' ability to close the transaction will injure the Company and its stockholders by depriving them of the benefits of the transaction.

### In violation of Section 16(a), venBio's beneficial ownership group failed to file a report of its holdings on Form 3

64.     Section 16(a) of the Exchange Act and SEC Rule 16a-3 promulgated thereunder require any person, group, or other beneficial owner of more than 10% of a company's common stock to report such holdings on Form 3 and update that filing whenever a member of that group buys or sells any shares of common stock.

65.     As reflected in its recent press releases, venBio holds approximately 9.9% of Immunomedics' common stock.  The Message Board Group's combined beneficial ownership of 6,191,578 shares amounts to approximately 5.8% of Immunomedics' common stock.  Orbimed owns approximately 3.59% of Immunomedics' common stock.  Thus, the collective holdings of venBio and its various beneficial ownership groups (the "Combined Group") is greater than 10% of Immunomedics' common stock.

66.   None of venBio, the Dissident Defendants, the Message Board Group, the members thereof, or Orbimed has ever reported holdings on a Form 3.

67.   Accordingly, Defendants are in violation of Section 16a of the Exchange Act.

### *The Combined Group must disgorge its*<br>*short-swing profits in Immunomedics stock to the Company*

68.   Under Rule 16a-1(a)(1), where the aggregate number of shares beneficially owned by a group exceeds 10%, each member of the group is deemed to be a greater than 10% beneficial owner and is liable to disgorge profits arising from transactions by such group member effected within a six-month period.

69.   Here, the Combined Group's unlawful failure to file a Form 3 has prevented Immunomedics from conclusively determining whether members of the Combined Group are liable to disgorge such profits.   However, on information and belief, Immunomedics believes that members of the Combined Group, including Defendants, may have earned such profits, which they must disgorge to the Company under Rule 16a-1(a)(1).

### FIRST CAUSE OF ACTION
**(Declaratory Judgment Nullifying Votes Solicited in Favor of the Dissident Candidates)**

70.   Immunomedics incorporates by reference the allegations set forth in each preceding paragraph hereof as if fully set forth herein.

71.   This count is brought against all the Defendants.

72.   There exists a justiciable controversy between Immunomedics and Defendants regarding the lawfulness of their SEC disclosures and their solicitation of proxies for the Dissident Candidates.

73.   venBio has held at least 5% of Immunomedics common stock since June 1, 2016. However, in violation of Section 13(d) of the Exchange Act and SEC Rule 13d-1, venBio did not

file a Schedule 13D related to its ownership of Immunomedics common stock until November 16, 2016.

74.     In violation of Section 13(d) of the Exchange Act and SEC Rules 13d-1, 13d-2, and 13d-5, venBio's November 16, 2016 Schedule 13D contains no disclosure—and has not been updated to contain any disclosure—of the (a) groups of persons and entities acting together with venBio for the purpose of acquiring, holding, voting, or disposing of Immunomedics stock or (b) the terms and nature of the relationship between venBio and the other members of the groups of persons and entities acting together with venBio for the purpose of acquiring, holding, voting, or disposing of venBio stock.

75.     As described above, Defendants, in various proxy solicitation materials, have made numerous misleading misstatements and omissions of material facts in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9.  The materially misleading misstatements and omissions made in the Defendants' proxy materials were made with at least the negligent state of mind required under Section 14(a) of the Exchange Act and SEC Rule 14a-9.

76.     As described above, venBio has made numerous proxy solicitations that, in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-6, have not been filed with the SEC and do not contain legally required explanatory information.

77.     The Combined Group of which Defendants are a part is the beneficial owner of more than 10% of Immunomedics' stock.  However, in violation of its obligations under Section 16(a) of the Exchange Act and SEC Rule 16a-3, the Combined Group has not filed a Form 3 with the SEC.

78.     Defendants' unlawful disclosures, group formations, and proxy solicitations have deprived Immunomedics' stockholders of their right to make decisions about the future of the

Company based on full and accurate information and, without action by this Court, are likely to distort the outcome of votes taken at Immunomedics' upcoming Annual Meeting.

79.     This result would irreparably injure the Company by depriving it of the leadership it would have obtained as a result of a lawful proxy voting process.

80.     Immunomedics has no adequate remedy at law.

81.     Accordingly, Immunomedics is entitled to, and requests, a declaratory judgment that:  (a) venBio's November 16, 2016 Schedule 13D filing was untimely, defective, and has not been amended as required by Regulation 13D; (b) Defendants solicited proxy votes in violation of Section 14(a) of the Exchange Act and SEC Rules 14a-9 and 14a-6; and (c) all proxies and votes solicited in favor of the Dissident Candidates are null and void due to Defendants' violations of the Exchange Act.

## SECOND CAUSE OF ACTION
### (Additional Injunctive and Other Relief)

82.     Immunomedics incorporates by reference the allegations set forth in each preceding paragraph hereof as if fully set forth herein.

83.     This count is brought against all the Defendants.

84.     Defendants' unlawful disclosures, group formations, and proxy solicitations have deprived Immunomedics' stockholders of their right to make decisions about the future of the Company based on full and accurate information and, without action by this Court, are likely to distort the outcome of votes taken at Immunomedics' upcoming Annual Meeting.

85.     This result would irreparably injure the Company by depriving it of the leadership it would have obtained as a result of a lawful proxy voting process.

86.     Immunomedics has no adequate remedy at law.

87.     Accordingly, Immunomedics is entitled to, and requests, preliminary and permanent injunctive relief ordering Defendants to: (a) issue an amended Schedule 13 in full compliance with Regulation 13D and disclosing all members of its beneficial ownership group or groups, (b) file additional proxy solicitation materials with the SEC acknowledging the unlawfulness of venBio's prior violations of the proxy solicitation rules and correcting all prior misstatements made in prior proxy solicitation materials, and (c) not make any further public statement that (i) opines on the outcome of the stockholder elections to be taken at Immunomedics' upcoming Annual Meeting, (ii) directly or indirectly impugns character, integrity or personal reputation, or directly or indirectly makes charges concerning improper, illegal or immoral conduct or associations, without factual foundation, or (iii) is otherwise materially false or misleading and related venBio's solicitation of proxies related to the Company.

## THIRD CAUSE OF ACTION
### (Disgorgement of Short-Swing Profits)

88.     Immunomedics incorporates by reference the allegations set forth in in each preceding paragraph hereof as if fully set forth herein.

89.     This count is brought against all the Defendants.

90.     As described above, the Combined Group, or any member thereof, has failed to properly file a report on Form 3 as required by Section 16(a) of the Exchange Act.  In addition, the Combined Group has failed to properly report its beneficial ownership and transactions in Common Stock and derivative securities, as well as its purposes for such acquisitions, as required by Section 13(d) of the Exchange Act.

91.     Because the Combined Group members, including Defendants, failed to comply with their reporting obligations under the Exchange Act, it is not possible to ascertain with

precision Defendants' short-swing profits that are subject to disgorgement.   However, upon information and belief, Defendants have garnered short-swing profits.

92.     Immunomedics demands disgorgement of all such short-swing profits to the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Immunomedics seeks a judgment:

93.     Declaring venBio's November 16, 2016 Schedule 13D filing  to be untimely and defective;

94.     Declaring that Defendants solicited proxy votes in violation of Section 14(a) of the Exchange Act and SEC Rules 14a-9 and 14a-6;

95.     Declaring all votes solicited in favor of the Dissident Candidates null and void due to Defendants' violations of the Exchange Act;

96.     Declaring that Immunomedics is entitled to reset the date for determination of stockholders of record eligible to vote at the Annual Meeting;

97.     Issuing an injunction requiring Defendants to:

   a.   issue an amended Schedule 13 in full compliance with Regulation 13D and disclosing all members of its beneficial ownership group or groups,

   b.   issue additional proxy solicitation materials acknowledging the unlawfulness of venBio's prior violations of the proxy solicitation rules and correcting all prior misstatements made in prior proxy solicitation materials, and

   c.   not make any further public statement that (i) opines on the outcome of the stockholder elections to be taken at Immunomedics upcoming Annual Meeting, (ii) directly or indirectly impugns character, integrity or personal

reputation, or directly or indirectly makes charges concerning improper, illegal or immoral conduct or associations, without factual foundation, or (iii) is otherwise materially false or misleading and related venBio's solicitation of proxies related to the Company.

98.     Enjoining Defendants from any additional acts of interference with the Company's contractual relationship with Seattle Genetics;

99.     Disgorging all of Defendants' short-swing profits to the Company;

100.    Awarding Immunomedics the costs and disbursements of this action, including reasonable attorneys' fees; and

101.    Granting Plaintiff Immunomedics such other and further relief as this Court may deem just and proper.

Dated:  February 17, 2016

**DLA PIPER LLP (US)**

/s/ *John L. Reed*

*Of Counsel*:

John L. Reed (DE. No. 3023)
Ethan H. Townsend (DE No. 5813)

Michael C. Holmes (*pro hac vice* to be filed)
John C. Wander (*pro hac vice* to be filed)
Robert Ritchie (*pro hac vice* to be filed)
VINSON & ELKINS LLP
Trammel Crow Center
2001 Ross Avenue, Suite 3700
Dallas, TX  75201
(214) 220-7700

1201 North Market Street, Suite 2100
Wilmington, DE  19801
(302) 468-5700
(302) 394-2341 (Fax)
john.reed@dlapiper.com
ethan.townsend@dlapiper.com

Timothy E. Hoeffner (*pro hac vice* to be filed)
DLA PIPER LLP (US)

Lawrence S. Elbaum (*pro hac vice* to be filed)
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, NY  10103-0040

1251 Avenue of the Americas, 27th Floor
New York, NY  10020-1104
(212) 335-4841
(212) 884-8551 (fax)
timothy.hoeffner@dlapiper.com

*Attorneys for Plaintiff Immunomedics, Inc.*