# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Immunomedics, Inc., | |
| Plaintiff, | |
| v. | C.A. No. 1:17-cv-00176-UNA |
| venBio Select Advisor LLC, Behzad Aghazadeh, Scott Canute, Peter Barton Hutt, and Khalid Islam, | |
| Defendants. | |

## OPENING BRIEF IN SUPPORT OF PLAINTIFF IMMUNOMEDICS, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

*Of Counsel*:

Michael C. Holmes (*pro hac vice* to be filed)
John C. Wander (*pro hac vice* to be filed)
Robert Ritchie (*pro hac vice* to be filed)
VINSON & ELKINS LLP
Trammel Crow Center
2001 Ross Avenue, Suite 3700
Dallas, TX 75201
(214) 220-7700

Lawrence S. Elbaum (*pro hac vice* to be filed)
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040

John L. Reed (DE. No. 3023)
Ethan H. Townsend (DE No. 5813)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE 19801
(302) 468-5700
(302) 394-2341 (Fax)
john.reed@dlapiper.com
ethan.townsend@dlapiper.com

Timothy E. Hoeffner (*pro hac vice* to be filed)
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
(212) 335-4841
(212) 884-8551 (fax)
timothy.hoeffner@dlapiper.com

Dated: February 21, 2017

*Attorneys for Plaintiff Immunomedics, Inc.*

# TABLE OF CONTENTS

**PAGE**

NATURE AND STAGE OF PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT ....................................................................................1

STATEMENT OF FACTS ..........................................................................................5

A.   With its takeover ambitions unlawfully kept secret, venBio builds a block
     of support at depleted prices ..........................................................................5

B.   After finally announcing its takeover plans, venBio repeatedly violates the
     SEC's proxy solicitation rules in an effort to trick investors into
     supporting its campaign ..................................................................................6

     1.   venBio's materially false and misleading proxy solicitations ...............6

     2.   venBio's Undisclosed Proxy Solicitations.............................................9

C.   venBio fails to amend its Schedule 13D to disclose all members of its
     proxy solicitation group ................................................................................10

LEGAL STANDARD.................................................................................................11

ARGUMENT ............................................................................................................12

I.   IMMUNOMEDICS IS LIKELY TO PREVAIL ON THE MERITS OF
     ITS UNDERLYING CLAIMS. .........................................................................12

     A.   venBio has materially violated Section 14(a) of the Exchange Act
          and the Proxy Rules promulgated thereunder .........................................12

          1.   venBio's Early Results, Accusations, and other false and
               misleading statements are textbook violations of SEC Rule
               14a-9 ...............................................................................................12

          2.   venBio's failure to file proxy solicitation materials directly
               violates SEC Rule 14a-6 ..................................................................14

     B.   venBio's failure to disclose the membership of its proxy
          solicitation group is a further violation of the Exchange Act ................15

     C.   As a result of venBio's violations of the Exchange Act,
          Immunomedics is entitled to the declarations it seeks in this action ...................16

- i -

II.     IMMUNOMEDICS AND ITS STOCKHOLDERS WILL SUFFER IRREPARABLE INJURY WITHOUT INJUNCTIVE RELIEF .....................................17

III.    NO UNDUE HARM WILL BE IMPOSED UPON THE DEFENDANTS IF INJUNCTIVE RELIEF IS GRANTED .......................................................18

IV.     THE PUBLIC INTEREST FAVORS EQUITABLE RELIEF HERE .............................19

CONCLUSION.....................................................................................................................20

EAST\140266747.5

# TABLE OF AUTHORITIES

**CASES**                                                              **PAGE(S)**

*Ashford Hosp. Prime, Inc. v. Sessa Capital (Master)*,
   2016 WL 7852507 (N.D. Tex. May 20, 2016) ...........................................................4

*Bender v. Jordan*,
   439 F. Supp. 2d 139 (D.D.C. 2006) ...........................................................................19

*Calumet Indus., Inc. v. MacClure*,
   464 F. Supp. 19 (N.D. Ill. 1978) ...............................................................................17

*Compton Press, Inc. Employees' Profit Sharing Ret. Plan v. Granada Investments, Inc.*,
   1992 WL 566329 (D.N.J. Nov. 23, 1992) ..................................................................11

*Delcath Sys, Inc. v. Ladd*,
   2006 WL 2708459 (S.D.N.Y. Sept. 20, 2006) *modified*,
   466 F.3d 257 (2d Cir. 2006)........................................................................................4

*Dillon v. Scotten, Dillon Co.*,
   335 F. Supp. 566 (D. Del. 1971).........................................................................15, 16

*Drobbin v. Nicolet Instrument Corp.*,
   631 F. Supp. 860 (S.D.N.Y. 1986) ...........................................................................15

*Edelman v. Salomon*,
   559 F.Supp. 1178 (D. Del. 1983)................................................................................4

*Gen. Elec. Co. By Levit v. Rowe*,
   1992 WL 277997 (E.D. Pa. Sept. 30, 1992) .............................................................13

*Gould v. American Hawaiian Steamship Co.*,
   331 F. Supp. 981 (D. Del. 1971)...............................................................................13

*In re Derivative Litig.*,
   2007 WL 1101276 (E.D. Pa. Apr. 11, 2007) ............................................................19

*Issa v. Sch. Dist. of Lancaster*,
   2017 WL 393164 (3d Cir. Jan. 30, 2017) .............................................................11, 19

*J. I. Case Co. v. Borak*,
   377 U.S. 426 (1964).....................................................................................................12

*Krauth v. Executive Telecard, Ltd.*,
  890 F. Supp. 269 (S.D.N.Y. 1995) ........................................................16

*Lebhar v. Movielab, Inc.*,
  1987 WL 5793 (S.D.N.Y. 1987) ...............................................................4

*Lichtenberg v. Besicorp Group Inc.*,
  43 F. Supp. 2d 376 (S.D.N.Y. 1999) ......................................................17

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
  148 F. Supp. 2d 1141 (D. Kan. 2001) ................................................4, 17

*Miller v. Mitchell*,
  598 F.3d 139 (3d Cir. 2010) ...........................................................11, 16

*MNI Mgmt., Inc. v. Wine King, LLC*,
  542 F. Supp. 2d 389 (D.N.J. 2008) ........................................................18

*MONY Group, Inc. v. Highfields Capital Mgmt., L.P.*,
  368 F.3d 138 (2d Cir. 2004) .............................................................4, 12

*Morales v. Freund*,
  163 F.3d 763 (2d Cir. 1999) .................................................................15

*Morales v. Quintel Entm't, Inc.*,
  249 F.3d 115 (2d Cir. 2001) ...........................................................14, 15

*Parsons v. Jefferson-Pilot Corp.*,
  789 F. Supp. 697 (M.D.N.C. 1992) ..................................................16, 17

*Piper v. Chris–Craft Indus.*,
  430 U.S. 1 (1977) ..................................................................................17

*Polaroid Corp. v. Disney*,
  862 F.2d 987 (3d Cir. 1988) .............................................................4, 17

*Rabbani v. Enzo Biochem, Inc.*,
  682 F. Supp. 2d 400 (S.D.N.Y. 2010) ....................................................14

*Ronson Corp. v. Liquifin Aktiengesellschaft*,
  483 F.2d 846 (3d Cir. 1973) .................................................................17

*Southmark Prime Plus, L.P. v. Falzone*,
  776 F. Supp. 888 (D. Del. 1991) ...........................................................17

*Tootsie Roll Indus., Inc. v. Sathers, Inc.*,
  666 F. Supp. 655 (D. Del. 1987) ..........................................................................................11

**STATUTES**

15 U.S.C. § 78m(d)(1)(D) .......................................................................................... 15

**RULES**

17 C.F.R. § 240.13d-101 .............................................................................................15

17 C.F.R. § 240.13d-2 .................................................................................................15

17 C.F.R. § 240.13d-5 .................................................................................................15

17 C.F.R. § 240.13d-5(b)(1) ........................................................................................15

17 C.F.R. § 240.14a-1(l)(1) .........................................................................................13

17 C.F.R. § 240.14a-1(I) ..............................................................................................14

17 C.F.R. § 240.14a-6(b) .............................................................................................13

17 C.F.R. § 240.14a-6 ..................................................................................3, 12, 13, 14

17 C.F.R. § 240.14a-9 .....................................................................................4, 12, 16

17 C.F.R. § 240.14a-9(a) .............................................................................................12

## NATURE AND STAGE OF PROCEEDINGS

On February 13, 2017, venBio Select Advisor LLC ("venBio") brought an action in the Court of Chancery of the State of Delaware against Immunomedics Inc. ("Immunomedics"), the current members of the Board of Directors of Immunomedics (the "Board"), and Seattle Genetics Inc. (the "Chancery Court Action"). In the Chancery Court Action, venBio alleges, among other things, that the Board breached their fiduciary duties by entering into a licensing transaction with Seattle Genetics Inc.

On February 17, 2017, Immunomedics filed this action seeking declaratory and injunctive relief to remedy a series of violations of the federal securities laws by venBio and Behzad Aghazadeh, Scott Canute, Peter Barton Hutt, and Khalid Islam (the "Dissident Candidates" and, collectively with venBio, "Defendants"). These unlawful actions have deprived Immunomedics and its stockholders of an opportunity for fair and informed director elections and entitle Immunomedics to a decree of this Court invalidating all proxies solicited on behalf of the Dissident Candidates. Immunomedics will be irreparably harmed if new directors are seated on its Board pending this Court's final adjudication of that relief. To prevent that harm, Immunomedics has filed, contemporaneously herewith, a Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") against Defendants, and respectfully submits this Opening Brief in Support of the Motion.

## SUMMARY OF ARGUMENT

Over the past nine months, venBio has waged an unlawful proxy contest in an effort to seize control of the Board of Immunomedics. A proxy contest occurs when a non-management stockholder solicits votes to be cast by proxy by other stockholders at a meeting of a company's stockholders. As here, the purpose of a proxy contest is often to secure majority representation,

- 1 -

and thus control, of a company's board of directors. The federal securities laws, and the rules promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC"), safeguard this process by ensuring that stockholders possess timely, accurate and complete information before making voting decisions. Throughout this proxy contest, however, venBio has flouted many of the most fundamental of these laws. As a result, venBio has caused Immunomedics, its stockholders, and the stockholder voting franchise ongoing and irreparable damage and harm.

To take just the most recent example, three times in the past two weeks alone, venBio has issued public statements predicting the outcome of this proxy contest and announcing a preliminary proxy tally. The proxy solicitation rules (the "Proxy Rules") promulgated by the SEC squarely prohibit the reporting of voting results until after a company's stockholder meeting. This is because the pre-announcement of results can improperly impact the votes of stockholders who may be undecided or inclined to change their vote prior to the meeting. venBio violated this rule right after Immunomedics announced a $2 billion licensing transaction with Seattle Genetics. By early-announcing voting results, venBio deprived stockholders of the opportunity to fairly weigh the announcement of this transaction in making a voting decision— which is exactly the harm the Proxy Rules are designed to protect.

venBio did not just start violating the federal securities laws over the past two weeks. In June 2016, for example, venBio unlawfully failed to file a Schedule 13D publicly disclosing its intent to exert influence and/or control over the Company within 10 days after obtaining 5% ownership in Immunomedics' stock. The purpose of the Schedule 13D filing requirement is to prevent large stockholders from continuing to trade in a stock while concealing material information about that stock from the investing public. But instead of making that disclosure, venBio secretly built an unlawful base of support against Immunomedics and a nearly 10% stake

- 2 -

in the Company of its own before it finally filed its initial Schedule 13D on November 16, 2016—*five months* after it became due. The very same day, venBio ambushed Immunomedics with its preliminary proxy statement announcing its campaign to seek control of the Board at the Company's 2016 annual meeting (the "Annual Meeting"), which was then scheduled to occur less than a month later.

venBio has also violated Regulation 13D by leaving numerous members of its proxy solicitation group completely hidden from the public. The SEC requires any person soliciting proxies to disclose all participants in a proxy contest on their proxy statement and Schedule 13D in order to prevent shadow proxy contests controlled by undisclosed actors. venBio's undisclosed group members include, at a minimum, OrbiMed Advisors, LLC ("OrbiMed"), with whom venBio is collaborating, and groups of stockholders that have united on an online message board (collectively, the "Undisclosed Group Members"). Together, venBio and its Undisclosed Group Members control as much as 19% of Immunomedics' stock. But, to this day, venBio has conveniently hidden its groups formed with the Undisclosed Group Members from the public.

Next, venBio has violated Rule 14a-6 of the Proxy Rules, which requires the filing of written solicitation materials with the SEC the day they are first issued. The purpose of this rule is to level the playing field for proxy contestants and to force disclosures that promote informed stockholder voting. But, Immunomedics recently discovered an email from venBio's principal, Behzad Aghazadeh, pasted into an online message board thread that clearly solicits votes from a stockholder who claims to control nearly six million shares of Immunomedics' stock. venBio, however, never filed this written solicitation with the SEC. Immunomedics and the market has still only seen the fraction of this written solicitation pasted on the message board and have had no opportunity to review venBio's other proxy solicitation materials hidden from public view.

- 3 -

There is reason to believe that there are many more written proxy solicitation materials that venBio likewise never filed with the SEC. These deceptive and selective solicitation practices have deprived all Immunomedics stockholders of the opportunity to make fully informed decisions based on symmetric information.

Finally, venBio has violated Rule 14a-9 of the Proxy Rules. To ensure that stockholder elections are based on facts and not misleading opinions, Rule 14a-9 expressly prohibits unsubstantiated accusations of immoral or illegal conduct. In violation of this rule, venBio's written proxy solicitation materials accuse the current Board—without any factual basis whatsoever—of "pad[ding] their pockets with stockholders' cash" and other "blatant and shameful" "self-serving actions" taken for the purpose of "enriching itself" "at the expense of stockholders' best interests." These slanderous attacks unfairly contaminate the stockholder voting franchise, which is exactly what Rule 14a-9 is designed to safeguard.

As a result of venBio's unlawful conduct, Immunomedics is ultimately entitled to a declaration invalidating any effect of venBio's unlawfully solicited proxies. To prevent irreparable harm to Immunomedics and its stockholders pending a final adjudication of that relief, it is well-established that preliminary injunctive relief is appropriate.[1]  Accordingly,

---

[1] *See, e.g.*, *Polaroid Corp. v. Disney*, 862 F.2d 987, 1006 (3d Cir. 1988) ("Because Polaroid has satisfied its burden of showing that it could eventually demonstrate that Shamrock's tender offer contained a material misrepresentation, . . . we will vacate the order of the district court and remand with instructions that the court preliminarily enjoin Shamrock's tender offer until such time as it makes appropriate corrective disclosure."); *Edelman v. Salomon*, 559 F. Supp. 1178, 1184 (D. Del. 1983) ("A preliminary injunction will be entered postponing the March 18th annual meeting of stockholders and requiring that curative proxy materials be circulated before the election of directors goes forward."); *MONY Group, Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 148 (2d Cir. 2004) (directing district court "to issue a preliminary injunction" to prevent violations of the Proxy Rules from causing "the sort of irreparable harm that the securities laws and regulations were intended to prevent"); *Delcath Sys, Inc. v. Ladd*, 2006 WL 2708459, at *5 (S.D.N.Y. Sept. 20, 2006) (extending a temporary restraining order forbidding defendant from taking "any action, including delivery of consents to [the company] or its registered agent," pertaining to the shareholder consents allegedly solicited and obtained in violation Sections 13(d)

- 4 -

Immunomedics respectfully requests that the Court grant the Motion and issue a temporary restraining order and, subsequently, a preliminary injunction that (i) prohibits Defendants from taking any further actions in this proxy contest that violate the federal securities laws, (ii) requires venBio to make corrective disclosures withdrawing their former statements in violation of the federal securities laws, and (iii) enjoins Defendants from benefiting in any way from their illegal shadow proxy contest, unless corrective disclosures are made and the stockholders are given at least 30 days prior the Annual Meeting to consider the corrective disclosures (which will require a rescheduling of the Annual Meeting).

## STATEMENT OF FACTS

**A.      With its takeover ambitions unlawfully kept secret, venBio builds a block of support at depleted prices**

On June 1, 2016, venBio crossed the 5% beneficial ownership threshold in Immunomedics' stock, triggering an obligation to, within 10 days, file a Schedule 13D with the SEC disclosing both the extent of venBio's holdings of Immunomedics stock and any plans it had related to changes to the composition of the Board.  *See* Ex. A1 (venBio's Amended Proxy Statement); Ex. A2 (Immunomedics' 10-Q).  But, venBio completely disregarded that obligation until November 16, 2016—more than *five months* after venBio's Schedule 13D reporting obligation arose and only four weeks prior to the Annual Meeting.  On that date, venBio

---

and 14(a)), *modified*, 466 F.3d 257 (2d Cir. 2006) ("continuing stay of any action to give effect to the consents pending trial of their validity"); *Ashford Hosp. Prime, Inc. v. Sessa Capital (Master)*, 2016 WL 7852507, at *2 (N.D. Tex. May 20, 2016) (granting preliminary injunction for company, which declared activist's "slate of nominees [] invalid and ineligible to stand for election to the board" and enjoined unlawful activity by activist); *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1154 (D. Kan. 2001) (granting preliminary injunction to prevent irreparable harm that would otherwise be caused by violations of Section 14(a)  in dissident proxy campaign); *Lebhar v. Movielab, Inc.*, 1987 WL 5793, at *2 (S.D.N.Y. 1987) (granting preliminary injunction because "[i]f this injunction were not granted, Movielab's shareholders could elect a Board of Directors based on misleading information which has been presented to them in violation of the securities laws").

- 5 -

blindsided the Company and the investing public by simultaneously filing its initial Schedule 13D and a preliminary proxy statement announcing its intention to seek control of the Board at Immunomedics' upcoming Annual Meeting. *See* Ex. A3 (venBio's Preliminary Proxy Statement); Ex. A4 (venBio's Schedule 13D).

It is now clear that venBio used its five months of illicit anonymity to trade on its material non-public information about its takeover plans, building its stake in Immunomedics' stock at depleted prices. Indeed, by the time venBio finally filed its Schedule 13D in November, it had already accumulated a nearly 10% stake in Immunomedics' common stock. *See* Ex. A4 (venBio's Schedule 13D).

**B.** **After finally announcing its takeover plans, venBio repeatedly violates the SEC's proxy solicitation rules in an effort to trick investors into supporting its campaign**

After venBio finally filed its Schedule 13D in November 2016, Immunomedics rescheduled its Annual Meeting, which had been originally scheduled for December 14, 2016, to February 16, 2017. *See* Ex. A5 (November 28, 2016 Press Release). But, as it turned out, venBio's strategically delinquent filing of its Schedule 13D was only the beginning of its unlawful activity in this proxy contest.

**1.** **venBio's materially false and misleading proxy solicitations**

After filing its Schedule 13D, venBio proceeded to inundate the market with misleading and unlawful proxy solicitation material that deprives Immunomedics' stockholders of a full and fair opportunity to evaluate the competing proxy campaigns.

*First*, as the Immunomedics' Annual Meeting has drawn near, venBio has misleadingly misreported early proxy tallies of the upcoming director elections, stating:

> [T]he current Board is rushing with the proposed transaction in an attempt to improve stockholders' perception of them and to reverse ***the likely defeat they face at the Annual Meeting***.

*See* Ex. A6, (February 10, 2017 venBio Press Release) (emphasis added).

> As of [February 9, 2017], ***venBio's Lead in the Stockholder Vote was Clear*** – with 80% of Outstanding Shares Submitted and 55% of Those Cast in Favor of venBio's Nominees.

*See* Ex. A7, (February 14, 2017 venBio Press Release) (emphasis modified). These statements (collectively, the "Early Results") are highly misleading. To start, the reported proxy tallies are inaccurate. *See* Ex. B (Marese Declaration). But, even if the tallies were accurate, the Early Results would still be misleading because they fail to disclose any information regarding the source of venBio's information regarding the proxy tally, the nature of the votes remaining to be cast, the number of votes cast for or against or abstaining with respect to each individual director, and the ability of stockholders to change their votes, particularly in light of the transformational licensing transaction with Seattle Genetics announced by Immunomedics on February 10, 2017, which precipitated these statements. *See* Ex. A6, (February 10, 2017 venBio Press Release); Ex. A7, (February 14, 2017 venBio Press Release).

*Second*, venBio's proxy solicitation materials have made the following attacks—without any factual support whatsoever—on the integrity of Immunomedics' current Board:

> The strategic failures and missteps that we believe are holding Immunomedics back include . . . the Company management team's ***self-enrichment at the expense of stockholders***.

*See* Ex. A8 (November 22, 2016 venBio Press Release) (emphasis added).

> [T]he Company is simply perpetuating ***the pattern of self-serving actions*** and value destruction ***that have characterized Immunomedics to date***.

*See* Ex. A9 (November 29, 2016 venBio Press Release) (emphasis added).

- 7 -

We believe that decisive change is sorely needed to correct ***the course of*** strategic missteps, mismanagement, and ***cronyism that has characterized the management and oversight of Immunomedics***.

*See* Ex. A10 (January 18, 2017 venBio Press Release) (emphasis modified).

The bottom line is that the slate of nominees proposed by Immunomedics represents the same ***cronyism and lack of credibility that have characterized the Company's leadership to date***.

*Id.* (emphasis modified).

This shared success across the organization is in stark contrast to the ***self-enrichment policies characterizing how the current management and Board have operated***.

*Id.* (emphasis modified).

***[T]he Board*** has completely failed to act as a good fiduciary for all stockholders, and . . . ***has focused solely on enriching itself***.

*Id.* (emphasis modified).

After ***decades of mismanagement and self-enrichment***, it is reprehensible for the Company to attempt to ***hold stockholders hostage*** to additional threats of how they have yet another means to ***pad their pockets with stockholders' cash***.

*See* Ex. A11 (January 30, 2017 venBio Press Release) (emphasis modified).

Immunomedics' announcement of a deal with Seattle Genetics is ***a blatant and shameful maneuver*** by the current Board and management to manipulate the outcome of the upcoming Annual Meeting and entrench themselves ***at the expense of stockholders' best interests***.

*See* Ex. A6 (February 10, 2017 venBio Press Release) (emphasis added).

The bottom line is that ***what the current Board says cannot be trusted, and their credibility with stockholders has long ago been squandered.***

*Id.* (emphasis added).

Seattle Genetics appears to have aided and abetted ***the Board's breach of its fiduciary duties to stockholders by knowingly agreeing to a subpar transaction*** primarily designed to entrench the Board rather than deliver stockholder value.

*Id.* (emphasis added).

- 8 -

> venBio urges stockholders not to fall prey to the ***manipulative tactics of the current Board***.

*Id.* (emphasis added).

> Seattle Genetics appears to have aided and abetted ***the Board's breach of its fiduciary duties to stockholders by knowingly agreeing to a subpar transaction*** primarily designed to entrench the Board rather than deliver stockholder value.

*See* Ex. A7 (February 14, 2017 venBio Press Release) (emphasis added).  venBio has not—and cannot—substantiate any of these accusations of immoral and illegal conduct (collectively, the "Accusations") with facts.

*Third*, venBio's proxy solicitation materials contain several outright falsehoods designed to mislead the investing public into supporting the Dissident Candidates.  For example, venBio's February 10, 2017 press release asserts:

> ***In Unprecedented Move***, ALL Three Leading Proxy Advisory Firms – ISS, Glass Lewis and Egan Jones – Have Supported venBio's FULL Slate of Nominees

*See id.*  But, at a minimum, each of the three advisory firms recently supported the full activist slate in the proxy contests involving (1) FBR & Co./Voce Capital, (2) Canadian Pacific Railway/Pershing Square and (3) Ultratech/Neuberger Berman.  *See* Exs. A12, A13, A14.

## 2.      venBio's Undisclosed Proxy Solicitations

The SEC requires all persons soliciting proxies to publicly file all of their written proxy materials with the SEC.  This rule ensures that proxy contests are conducted in the light of day, subject to the SEC rules and regulations that ensure a fair and open competition for board representation.  In direct violation of this strict requirement, venBio has solicited proxies from stockholders in an online forum without ever filing these materials with the SEC.  One such post on the Message Board includes a verbatim written solicitation from venBio's principal, Behzad Aghazadeh, stating:

- 9 -

> I hope there is no doubt that our interests are aligned, but more importantly, I would only be 1 voice on the board, and all others are independent fiduciaries, and are required to conduct themselves in a manner that is in the best interest of all, and not just one . . . independent of the size of that one's holding, or position within the company.

*See* Ex. A15. venBio has also used members of the online forum as a covert conduit for its proxy solicitations, without filing those solicitations with the SEC. *See id.* There is reason to believe that venBio used many more written proxy solicitation materials that were never filed with the SEC. But, because of venBio's secretive actions, Immunomedics cannot learn the full extent of venBio's unlawful proxy solicitation activity, and will only be able to discover that information through discovery in this action.

**C.    venBio fails to amend its Schedule 13D to disclose all members of its proxy solicitation group**

When it filed its initial Schedule 13D on November 16, 2016, venBio failed to note its membership in any group formed for the purpose of affecting Immunomedics' upcoming stockholder votes. *See* Ex. A4 (venBio's Schedule 13D). But, since that filing, OrbiMed has informed Immunomedics that, following meetings with venBio principal Behzad Aghazadeh, OrbiMed has begun collaborating with venBio for the purpose of acquiring, holding, and voting shares of Immunomedics' stock. See Ex. C. For example, OrbiMed informed Immunomedics that venBio has made promises to OrbiMed, including pursuing a joint long-term financing and managerial plan for Immunomedics in order to secure OrbiMed votes. *Id.* Nevertheless, venBio has never revealed publicly this arrangement, but instead has hidden the nature of its relationship with OrbiMed.

In addition, venBio has also clearly formed a group with certain Immunomedics stockholders that communicate on an online message board about Immunomedics at

- 10 -

www.SiliconInvestor.com (the "Message Board Group"). *See* Ex. A15. After the Message Board Group took shape, messages posted to the group make clear that it joined forces with venBio for the purpose of affecting Immunomedics' upcoming director elections. *See id.* Indeed, the Message Board Group's spokesperson has been in direct communication with venBio and has directed members of the Message Board Group to "throw the [Company's] white [proxy card] away" and vote the gold proxy card of venBio. *Id.* The Message Board Group's undisclosed group activities also include using members of the Message Board to assist other stockholders in contacting venBio's proxy solicitor in order to facilitate the voting of their proxies. *Id.*

## LEGAL STANDARD

A preliminary injunction should be granted where the requesting party demonstrates "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010). The "same factors apply to temporary restraining orders" that apply to preliminary injunctions. *Compton Press, Inc. Employees' Profit Sharing Ret. Plan v. Granada Investments, Inc.*, 1992 WL 566329, at *10 (D.N.J. Nov. 23, 1992). "The function of the temporary restraining order is to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." *Tootsie Roll Indus., Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987). Here, because these factors weigh in favor of injunctive relief, the Court should issue a Temporary Restraining Order and, subsequently, a Preliminary Injunction.

- 11 -

<u>**ARGUMENT**</u>

I.   **IMMUNOMEDICS IS LIKELY TO PREVAIL ON THE MERITS OF ITS
     UNDERLYING CLAIMS**

"To satisfy [the] requirement [of a likelihood of success on the merits] for preliminary

relief, the movant need only prove a 'prima facie case,' not a 'certainty' she'll win." *Issa v. Sch.*

*Dist. of Lancaster*, 2017 WL 393164, at *6 (3d Cir. Jan. 30, 2017) (quoting *Highmark, Inc. v.*

*UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001)). That is, "the movant need only

show a 'reasonable probability' of success." *Id.* (quoting *Punnett v. Carter*, 621 F.2d 578, 583

(3d Cir. 1980)). Immunomedics easily satisfies that standard here.

   A.   **venBio has materially violated Section 14(a) of the Exchange Act and the
        Proxy Rules promulgated thereunder**

"The purpose of [Section] 14(a) is to prevent management or others from obtaining

authorization for corporate action by means of deception or inadequate disclosure in proxy

solicitation." *J. I. Case Co. v. Borak,* 377 U.S. 426, 431 (1964). To carry out this purpose, the

SEC has promulgated the Proxy Rules, including Rule 14a-9, which prohibit materially

misleading misstatements or omissions, and Rule 14a-6, which mandates public disclosure of

proxy solicitation materials. *See* 17 C.F.R. § 240.14a-9(a), 17 C.F.R. § 240.14a-6; *see also*

*MONY Group*, 368 F.3d at 148 ("The SEC rules promulgated under Section 14(a) are intended to

level somewhat the playing field for proxy contestants and to force disclosures that promote

informed shareholder voting."). venBio's unlawful proxy campaign has violated both rules.

      1.   **venBio's Early Results, Accusations, and other false and misleading
           statements are textbook violations of SEC Rule 14a-9**

SEC Rule 14a-9 provides that no proxy solicitation shall contain "any statement which,

at the time and in the light of the circumstances under which it is made, is false or misleading

with respect to any material fact, or which omits to state any material fact necessary in order

- 12 -

to make the statements therein not false or misleading. . . ." 17 C.F.R. § 240.14a-9(a).  To assist in the enforcement of this Rule, the SEC included within its text express examples of statements that would be deemed misleading and, therefore, a violation of the Rule, including:

- "Material which directly or indirectly impugns character, integrity or personal reputation, or directly or indirectly makes charges concerning improper, illegal or immoral conduct or associations, without factual foundation;" and

- "Claims made prior to a meeting regarding the results of a solicitation."

*Id.* at Notes b and d.  Thus, the SEC has already expressly contemplated and prohibited precisely the Early Results, Accusations, and false statements venBio has made in this proxy contest.

Moreover, venBio's Early Results, Accusations, and false statements omit critical related facts necessary for an accurate understanding of venBio's claims.  For example, as noted above, the Early Results are devoid of critical details and context necessary to avoid misleading stockholders—including the nature of the votes cast, those remaining to be cast, and the ability of stockholders to change their vote.  And, the Accusations fail to provide any factual support— because no such support exists—for their allegations of self-dealing by Immunomedics' current Board.

The Early Results, Accusations, and false statements that venBio has included in its proxy materials are also indisputably material to the outcome of the Proxy Contest.  "[S]ince [Section] 14(a) seeks to insure the informed exercise of the franchise," the Early Results, which misleadingly make "the exercise seem futile and which divert[] shareholder attention from careful analysis of a proxy statement for purposes of exercising the right to vote [are] certainly [] a material defect."  *Gould v. American Hawaiian Steamship Co.*, 331 F. Supp. 981, 992 (D. Del. 1971).  In addition, it is difficult to imagine anything more material to a stockholder in voting for directors than whether the director is likely to steal from the Company, as the Accusations falsely

- 13 -

accuse Immunomedics' current Board of doing. *Cf. Gen. Elec. Co. By Levit v. Rowe*, 1992 WL 277997, at *11 (E.D. Pa. Sept. 30, 1992) ("Allegations of self-dealing . . . are presumptively material under the securities laws."). Finally, venBio's false claim that the Dissident Directors have received "unprecedented" support from third-parties has obvious potential to mislead stockholders' perceptions of the Dissident Candidates.

### 2. venBio's failure to file proxy solicitation materials directly violates SEC Rule 14a-6

Under Rule 14a-6(b), "definitive copies of . . . all [] soliciting materials . . . must be filed with the Commission no later than the date they are first sent or given to security holders." *See* 17 C.F.R. § 240.14a-6(b). And Rule 14a-1(l)(1) defines "solicitation" broadly to include "any request for a proxy, irrespective of whether the request is accompanied by or included in a formal proxy card." 17 C.F.R. § 240.14a-1(I). The Proxy Rules thus "apply not only to direct requests to furnish, revoke or withhold proxies, but also to communications that may indirectly accomplish such a result or constitute a step in a chain of communications designed ultimately to accomplish such a result." *Rabbani v. Enzo Biochem, Inc.*, 682 F. Supp. 2d 400, 412 (S.D.N.Y. 2010) (citations omitted). "The issue is whether the challenged communication, seen in the totality of circumstances, is 'reasonably calculated' to influence the shareholders' votes." *Id.*

Here, as described above, Immunomedics has discovered direct written communication from venBio to an Immunomedics stockholder seeking to influence how that stockholder votes. *See* Ex. A15. In addition, it appears that venBio has employed members of the Message Board Group as agents to solicit proxies on its behalf. *See id.* None of these solicitations, however, has been filed with the SEC. The undisclosed solicitations Immunomedics has found so far, and all others venBio has made like them, are a direct violation of Rule 14a-6. They frustrate the

- 14 -

purpose of Rule 14a-6, which ensures that proxy fights are conducted in the light of day, subject to the SEC rules and regulations that ensure a fair and open competition for board representation.

**B.     venBio's failure to disclose the membership of its proxy solicitation group is a further violation of the Exchange Act**

The purpose of Section 13(d) of the Exchange Act is "to 'alert the marketplace to every large, rapid aggregation or accumulation of securities, regardless of technique employed, which might represent a potential shift in corporate control.'" *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 122-23 (2d Cir. 2001) (citation omitted).  To effect this purpose, Section 13(d) "requires any person acquiring beneficial ownership of five percent or more of a corporation's common stock to disclose within ten days of the acquisition certain information to the corporation, the Commission, and the exchanges on which the stock is traded." *Id.* (citing 15 U.S.C. § 78m(d)(1)(D)); *see also* 17 C.F.R. § 240.13d-101.  As part of this requirement, if two or more persons reach an understanding to work together "for the purpose of acquiring, holding, voting or disposing of equity securities," they must, under Rule 13d-5, disclose "the nature of the relationship between [the members of the] group" in a Schedule 13D.  *See Quintel*, 249 F.3d at 123; 17 C.F.R. § 240.13d-5(b)(1).

"A 'group' under § 13(d) . . . need not be committed to acquiring, holding, voting, or disposing of securities on a specific set of terms.  All that is required is that the members of the group have combined to further a common objective with regard to one of those activities." *Morales v. Freund*, 163 F.3d 763, 767 n. 5 (2d Cir. 1999) (citation omitted).  "The agreement may be formal or informal and may be proved by direct or circumstantial evidence." *Quintel*, 249 F.3d at 124.

- 15 -

Here, as described above, venBio has been collaborating and coordinating with both OrbiMed and the Message Board Group. But venBio made no disclosure of these relationships, or the nature of them, in its Schedule 13D. This is a direct violation of Section 13(d) and the rules promulgated thereunder by the SEC. *See Drobbin v. Nicolet Instrument Corp.*, 631 F. Supp. 860, 886-87, 914 (S.D.N.Y. 1986) (granting preliminary injunction based on alleged Section 13(d) violation). Likewise, venBio's failure to amend its Schedule 13D to include such information violates Section 13(d). *See* 17 C.F.R. § 240.13d-2.

C. **As a result of venBio's violations of the Exchange Act, Immunomedics is entitled to the declarations it seeks in this action**

This "Court has the power to grant all necessary relief to redress violations of [the Exchange Act]." *Dillon v. Scotten, Dillon Co.*, 335 F. Supp. 566, 572 (D. Del. 1971). "The customary remedy" for such violations "is a decree nullifying the corporate action taken on the basis of [the unlawful] proxies." *Parsons v. Jefferson-Pilot Corp.*, 789 F. Supp. 697, 704 (M.D.N.C. 1992) (nullifying corporate action taken on the basis of proxies tainted by Rule 14a-9 violations) (citing *Edelman*, 559 F. Supp. at 1184); *see also Dillon*, 335 F. Supp. at 572 ("In view of the violations of Section 14(a) referred to above, the proxies used at the March 31, 1971 Annual Shareholders Meeting of Scotten, Dillon must be declared void and the election of Prifti and Bean as directors declared null and void."). Thus, here, in light of venBio's material violations of the Exchange Act, this Court should nullify all proxies solicited by venBio. Because that is the ultimate relief Immunomedics seeks in this action, it has satisfied the first factor for preliminary injunctive relief: "a likelihood of success on the merits." *Miller*, 598 F.3d at 147.

## II. IMMUNOMEDICS AND ITS STOCKHOLDERS WILL SUFFER IRREPARABLE INJURY WITHOUT INJUNCTIVE RELIEF

To preserve the status quo pending resolution of this action on the merits, Immunomedics seeks injunctive relief ordering Defendants to (1) comply with the Proxy Rules, and (2) not assert any purported right to take office as a member of the Board until venBio has issued corrective disclosures and given Immunomedics' stockholders sufficient time to digest those disclosures prior to voting in director elections. In both respects, this injunctive relief is necessary to protect Immunomedics and its stockholders from irreparable injury.

*First*, by their very nature, venBio's violations of the Exchange Act are irreparably injurious. "Irreparable injury results from the use of false and misleading proxies when the free exercise of shareholders' voting rights will be frustrated." *Krauth v. Executive Telecard, Ltd.*, 890 F. Supp. 269, 287 (S.D.N.Y. 1995). Thus, an act that would "depriv[e] . . . shareholders' opportunity to make a fully informed decision and vote . . . alone establishes the irreparable harm sought to be prevented by [Section] 14 of the [Exchange] Act." *Lichtenberg v. Besicorp Group Inc.*, 43 F. Supp. 2d 376, 390 (S.D.N.Y. 1999); *see also Polaroid*, 862 F.2d at 1006 ("The inadequacy of a remedy at law and the importance that Congress has attached to accurate disclosure of material information establishes irreparable harm."); *Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 903 (D. Del. 1991) ("The continuation of material non-disclosures . . . can constitute irreparable harm."); *Lone Star Steakhouse*, 148 F. Supp. 2d at 1150 ("plaintiff will be irreparably injured in that its shareholders will have negative impressions of the Board based upon allegedly false and misleading information disseminated by defendant during the proxy dispute").

*Second*, if, pending the outcome of this lawsuit, venBio's Dissident Candidates were allowed to take office on Immunomedics' Board without corrective disclosures, this would cause additional, irreparable injury. "[I]n corporate control contests, the stage of preliminary injunctive relief, rather than post-contest lawsuits, 'is the time when relief can best be given.'" *Piper v. Chris–Craft Indus.,* 430 U.S. 1, 42 (1977). This is because, once a change of control has been consummated, "it becomes difficult, and sometimes virtually impossible, for a court to 'unscramble the eggs.'" *Ronson Corp. v. Liquifin Aktiengesellschaft*, 483 F.2d 846, 851 (3d Cir. 1973); *see also Calumet Indus., Inc. v. MacClure*, 464 F. Supp. 19, 28 (N.D. Ill. 1978) ("the court finds that irreparable injury, a change in the board of directors which may result in transactions which would be difficult to unscramble, is likely to occur if preliminary relief is not granted"). Here, if Defendants are allowed to take office on the Board based on elections tainted by their violations of the federal securities laws, an irreparable "scrambling of the eggs" will transpire. Even an ultimate "decree nullifying the corporate action taken on the basis of [venBio's unlawful] proxies," would not be able to undo such damage. *See Parsons*, 789 F. Supp. at 704. Thus, to avoid irreparable injury to Immunomedics and its stockholders before this Court reaches a final judgment in this action, the Court should preliminarily enjoin Defendants to make corrective disclosures before any such director elections take place. *See, supra* fn. 1.

## III. NO UNDUE HARM WILL BE IMPOSED UPON THE DEFENDANTS IF INJUNCTIVE RELIEF IS GRANTED

Immunomedics and its stockholders will suffer irreparable harm if venBio's false and misleading statements are not corrected or if Defendants are allowed to seat Dissident Candidates on the Board without first correcting their prior violations of the federal securities laws. By contrast, the only hardship Defendants would face from such relief—other than the illusory

- 18 -

"hardship" of having to abide by federal securities laws—is minimal: a 30 day waiting period to allow the market to digest their corrective disclosures prior to director elections. Any such hardship that might be caused by this mere passage of time pales by comparison to the irreparable harm that Immunomedics and its stockholders would face absent injunctive relief.

Moreover, this hardship must be discounted because it is entirely self-inflicted. *See MNI Mgmt., Inc. v. Wine King, LLC*, 542 F. Supp. 2d 389, 403 (D.N.J. 2008) ("The injury a nonmoving party might suffer if an injunction is granted should be discounted if there are any facts indicating that the injury was self-inflicted.") (citing *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 728 (3d Cir. 2004)). If venBio had not tainted Immunomedics' upcoming director elections with its violations of the federal securities laws, there would be no threat of irreparable harm to Immunomedics or its stockholders, and no need for injunctive relief. Defendants should not be permitted to bootstrap an objection to injunctive relief based on hardships that their own unlawful conduct created.

## IV.     THE PUBLIC INTEREST FAVORS EQUITABLE RELIEF HERE

"If a plaintiff proves 'both' a likelihood of success on the merits and irreparable injury, it 'almost always will be the case' that the public interest favors preliminary relief." *Issa*, 2017 WL 393164 at *16 (citations omitted). This case is no exception.

The injunctive relief Immunomedics seeks here "serve[s] the public interest in effective enforcement of the securities laws" by (1) preventing continued violation of those laws and (2) requiring additional disclosures to remedy, to the extent possible, past violations of those laws. *Bender v. Jordan*, 439 F. Supp. 2d 139, 178 (D.D.C. 2006); *see also In re Derivative Litig.*, 2007 WL 1101276, at *3 (E.D. Pa. Apr. 11, 2007) (the securities laws protect the "public interest in the integrity of securities markets"). Indeed, "[s]ince it is impossible as a practical

- 19 -

matter for the government to seek out and prosecute every important violation of laws designed to protect the public in the aggregate, private actions [like this one] which incidentally benefit the general public interest, perform a vital public service." *Bender*, 439 F. Supp. 2d at 178 (quoting *Gulf & W. Indus. v. Great Atl. & Pac. Tea Co.,* 476 F.2d 687, 699 (2d Cir. 1973)).

## <u>CONCLUSION</u>

For the reasons set forth above, and to preserve the status quo pending a preliminary injunction hearing, Immunomedics respectfully requests that the Court grant the Motion and issue a temporary restraining order and, subsequently, a preliminary injunction that:

(a)    prohibits Defendants from making any public statement remarking on the expected or purported outcome of the director elections at Immunomedics' upcoming 2016 Annual Meeting (the "Annual Meeting");

(b)    prohibits Defendants from making any public statement related to Immunomedics or its directors or officers which directly or indirectly impugns character, integrity or personal reputation, or directly or indirectly makes charges concerning improper, illegal or immoral conduct or associations, without factual foundation;

(c)    prohibits Defendants from making any public statement relating to Immunomedics or its directors or officers that is otherwise materially false or misleading;

(d)    requires venBio to issue corrective disclosures at least 30 days prior to the Annual Meeting, including (i) an amended Schedule 13D in full compliance with Regulation 13D and disclosing all members of venBio's group or groups and (ii) additional proxy solicitation materials withdrawing venBio's prior false and misleading statements that were made in violation of the Proxy Rules;

(e)    prohibits Defendants from benefitting in any way from their illegal shadow proxy contest, including, but not limited to, by asserting any claimed right to take office as a member of the Board of Directors of Immunomedics, unless and until the corrective disclosures required above are made and the stockholders are given at least 30 days prior the Annual Meeting to consider the corrective disclosures (which will require a rescheduling of the Annual Meeting); and

(f)    requires venBio to either (i) withdraw its request, made in the Chancery Court Action, for Immunomedics' Annual Meeting to take place on March 3, 2017 or (ii) stipulate in this action to Immunomedics' right to move the date of the Annual Meeting to a date at least 30 days after venBio has made the corrective disclosures required by this injunction.

- 20 -

Dated:  February 21, 2016

**DLA PIPER LLP (US)**


*Of Counsel*:

/s/ *John L. Reed*

John L. Reed (DE I.D. No. 3023)

Michael C. Holmes (*pro hac vice* to be filed)

Ethan H. Townsend (DE I.D. No. 5813)

John C. Wander (*pro hac vice* to be filed)

1201 North Market Street, Suite 2100

Robert Ritchie (*pro hac vice* to be filed)

Wilmington, DE  19801

VINSON & ELKINS LLP

(302) 468-5700

Trammel Crow Center

(302) 394-2341 (Fax)

2001 Ross Avenue, Suite 3700

john.reed@dlapiper.com

Dallas, TX  75201

ethan.townsend@dlapiper.com

(214) 220-7700


Timothy E. Hoeffner (*pro hac vice* to be filed)

Lawrence S. Elbaum (*pro hac vice* to be filed)

DLA PIPER LLP (US)

VINSON & ELKINS LLP

1251 Avenue of the Americas, 27th Floor

666 Fifth Avenue, 26th Floor

New York, NY  10020-1104

New York, NY  10103-0040

(212) 335-4841

(212) 884-8551 (fax)

timothy.hoeffner@dlapiper.com


*Attorneys for Plaintiff Immunomedics, Inc.*


- 21 -