IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IMMUNOMEDICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> VENBIO SELECT ADVISOR LLC, BEHZAD AGHAZADEH, SCOTT CANUTE, PETER BARTON HUTT, AND KHALID ISLAM, <br><br> Defendants. | C.A. No. 1:17-cv-00176-LPS |

## VENBIO SELECT ADVISOR LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHULTE ROTH & ZABEL LLP
Michael E. Swartz
Kristie M. Blase
Abigail F. Coster
919 Third Avenue
New York, New York 10022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
David J. Teklits (#3221)
Kevin M. Coen (4775)
Alexandra M. Cumings (#6146)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
dteklits@mnat.com
kcoen@mnat.com
acumings@mnat.com
  *Counsel for Defendant venBio Select Advisor LLC*

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ..................................................................................1

STATEMENT OF FACTS .......................................................................................4

 I. THE COURT SHOULD NOT AWARD EQUITABLE RELIEF TO IMMUNOMEDICS FOR ITS INEQUITABLE ACTIONS ...................................6

  A. LACHES BARS INJUNCTIVE RELIEF HERE. ....................................6

  B. PLAINTIFF IS ESTOPPED FROM SEEKING RELIEF BASED ON REPRESENTATIONS IT MADE TO THE DELAWARE CHANCERY COURT. ...........................................................................7

  C. PLAINTIFF'S OTHER REQUESTED INJUNCTIVE RELIEF IS ENTIRELY UNWARRANTED. ................................................................8

 II. PLAINTIFF FAILS TO MEET THE PRELIMINARY INJUNCTION STANDARD ...................................................................................................8

  A. PLAINTIFF HAS NO REASONABLE PROBABILITY OF SUCCESS ON ITS SECTIONS 13(d) AND 14(a) CLAIMS. ....................9

  B. PLAINTIFF HAS FAILED TO SHOW IRREPARABLE HARM. ..........14

  C. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR NO INJUNCTIVE RELIEF ..................................................................14

CONCLUSION .......................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Atlas Corp. v. Blasius Indus., Inc.*,
    705 F. Supp. 190 (D. Del. 1988), *aff'd*, 865 F.2d 249 (3d Cir. 1988) ........................ 4

*Bertoglio v. Tex. Int'l Co.*,
    472 F. Supp. 1017 (D. Del. 1979) ........................ 8

*Birnbaum v. Blum*,
    546 F. Supp. 1363 (S.D.N.Y. 1982) ........................ 6

*Capital Real Estate Investors Tax Exempt Fund Ltd. P'ship v. Schwartzberg*,
    929 F. Supp. 105 (S.D.N.Y. 1996) ........................ 12

*D&N Fin. Corp. v. RCM Partners Ltd. P'ship*,
    735 F. Supp. 1242 (D. Del. 1990) ........................ 8, 14-15

*deSanctis v. Goldenberg*,
    C.A. No. 12981-VCL (Del. Ch. Dec. 13, 2016) ........................ 5-6

*Eli Lilly & Co. v. Premo Pharm. Labs., Inc.*,
    630 F.2d 120 (3d Cir. 1980) ........................ 8

*Energy Ventures, Inc. v. Appalachian Co.*,
    587 F. Supp. 734 (D. Del. 1984) ........................ 8, 14

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
    286 F.3d 613 (2d Cir. 2002) ........................ 11

*Int'l Banknote Co., Inc. v. Muller*,
    713 F. Supp. 612 (S.D.N.Y. 1989) ........................ 15

*Jacobs v. Pabst Brewing Co.*,
    549 F. Supp. 1050 (D. Del. 1982) ........................ 9

*Kennecott Copper Corp. v. Curtiss-Wright Corp.*,
    449 F. Supp. 951 (S.D.N.Y. 1978) ........................ 13-14

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    No. 09 MD 2030 (LAP), 2010 WL 1924719 (S.D.N.Y. May 11, 2010) ........................ 13

*Mgmt. Assistance Inc. v. Edelman*,
    584 F. Supp. 1016 (S.D.N.Y. 1984) ........................ 13

*MONY Group, Inc. v. Highfields Capital Mgmt., L.P.*,
    368 F.3d 138 (2d Cir. 2004) ........................ 14

*New Era Publ'ns Int'l, ApS v. Henry Holt & Co.*,
 873 F.2d 576 (2d Cir. 1989)......................................................................................6

*Polaroid Corp. v. Disney*,
 862 F.2d 987 (3d Cir. 1988)....................................................................................14

*Rondeau v. Mosinee Paper Corp.*,
 422 U.S. 49 (1975)..................................................................................................15

*Rosen v. Brookhaven Capital Mgmt. Co., Ltd.*,
 113 F. Supp. 2d 615 (S.D.N.Y. 2000)....................................................................10

*Rosenberg v. XM Ventures*,
 129 F. Supp. 2d 681 (D. Del. 2001), *aff'd*, 274 F.3d 137 (3d Cir. 2001) ...............10

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
 81 F.3d 355 (3d Cir. 1996).......................................................................................7

*Samick Music Corp. v. Del. Music Indus.*,
 Civ. A. No. 91-23-CMW, 1992 WL 200882 (D. Del. Aug. 3, 1992).......................7

*Scott v. Multi-Amp Corp.*,
 386 F. Supp. 44 (D.N.J. 1974)........................................................................... 11-12

*SEC v. Teo*,
 746 F.3d 90 (3d Cir. 2014).......................................................................................9

*Southmark Prime Plus, L.P. v. Falzone*,
 776 F. Supp. 888 (D. Del. 1991)..............................................................................7

*Treadway Cos., Inc. v. Care Corp.*,
 638 F.2d 357 (2d Cir. 1980).................................................................................8, 14

**Rules and Statutes**

Securities Exchange Act § 13(d)........................................................................... *passim*

Securities Exchange Act § 14(a)...............................................................................3, 11

Defendant venBio Select Advisor LLC ("venBio") submits this memorandum of law in opposition to the motion of Plaintiff Immunomedics, Inc. ("Immunomedics" or the "Company") for a temporary restraining order and preliminary injunction.

## SUMMARY OF ARGUMENT

Make no mistake about it – Immunomedics did not, as it claims, bring this suit to level the playing field in its proxy contest against venBio.[1] Quite the contrary. Immunomedics brought this action in a transparent effort to manipulate the judicial process and gain an unwarranted strategic advantage in a proxy contest that it cannot win on the merits. The claims it asserts are baseless, the relief it seeks is unwarranted, and its attempt to have this Court overturn the binding concessions it made to the Delaware Chancery Court is improper.

Immunomedics was founded in 1982 by David Goldenberg, who serves as the Company's Chairman and continues to treat the Company as his own. Under Goldenberg's "leadership," Immunomedics stock has dramatically underperformed the market. Over the last 16 years, the Company's share price has declined 65%, and, last year, it underperformed the Russell (3000) Index by 45%.[2] Understandably, the Company's shareholders, including venBio, wanted change – change that finally seemed likely when venBio nominated a slate of four directors for election to the Company's five-member Board on November 16, 2016.

Faced with the threat of losing their positions to venBio's slate, the incumbent Board engaged in a series of "Hail Mary" actions designed to entrench themselves:

- On November 28, 2016, the Board postponed the date of the annual meeting for the election of directors (the "Annual Meeting") from December 14, 2016 to February 16, 2017 to buy time to alter the trajectory of their likely loss to venBio.

---

[1] Behzad Aghazadeh, Scott Canute, Peter Barton Hutt, and Khalid Islam (the "VenBio Nominees"), though named as defendants, are not subject to the jurisdiction of this Court. As such, they do not appear in this opposition to Plaintiff's Motion.

[2] Support for factual assertions made herein is contained in the Declaration of Behzad Aghazadeh ("AD"). AD ¶3.

1

- On January 9, 2017, the Board expanded its size from five directors to seven to reduce the anticipated impact of the venBio Nominees.

- After expanding the Board's size, Goldenberg and his wife and co-director, Cynthia Sullivan, appointed four new directors with extensive ties to them to occupy a majority of the Board and cement their control in the boardroom.

- On February 10, 2017, four business days before the rescheduled Annual Meeting and with sufficient proxies having been tendered such that it was clear that the venBio slate would comfortably win the election, the incumbent directors approved an agreement to license the Company's crown jewel asset, an oncology drug, to Seattle Genetics, Inc. (the "Seattle Genetics Transaction") at a fire sale price in a failed effort to influence the stockholders' vote on directors.

- Also on February 10, 2017, in connection with announcing the Seattle Genetics Transaction, the Company postponed the Annual Meeting (a second time) until March 3, 2017, again with the hope of avoiding a loss at the polls.

- That same day, the Board, unilaterally and without notice, changed the Company's by-laws to alter the voting rules so that Goldenberg, his wife, and the other longest-serving director would remain in power because it appeared that none of them will receive a majority of stockholder votes.

AD ¶¶28-29, 32-24, 37. Although intended to ensure that the Board continued in office, none of the above tactics has altered the likely outcome of the vote in favor of venBio's slate.

In response to the improper Board actions disclosed on Friday, February 10, 2017, venBio brought suit in Delaware Chancery Court the following Monday, February 13, 2017, against the Board, the Company (as a nominal defendant), and Seattle Genetics (as an aider and abettor) for breaches of fiduciary duties arising from their acts of entrenchment. AD ¶35. Among the relief venBio sought was an order to maintain the status quo by enjoining the Company from postponing the Annual Meeting for a third time or changing the meeting's record date, and from closing the Seattle Genetics Transaction until after the election of the new Board.

In response, the Company made the following representations to Vice Chancellor Laster on February 15, 2017: "As to the annual meeting itself, Immunomedics agrees to hold the annual meeting of stockholders on March 3, 2017, agrees not to postpone, adjourn, or otherwise

delay without Court approval, and agrees it will not change the record date, thus mooting Count IV of the Complaint."[3] The Chancery Court and venBio relied on those representations in deferring a hearing on venBio's request for immediate injunctive relief.[4] *See* AD ¶36.

Remarkably, given its representations, Immunomedics brought this suit two days later, seeking a declaration from this Court that it "is entitled to reset the date for determination of stockholders of record eligible to vote at the Annual Meeting." (¶ 96.[5]) Further, in its Motion, Plaintiff asks this Court to issue injunctive relief that "requires venBio to either (i) withdraw its request, made in the Chancery Court Action, for Immunomedics's annual meeting to take place on March 3, 2017 or (ii) stipulate in this action to Immunomedics right to move the date of the Annual Meeting to a date at least 30 days after venBio has made the corrective disclosures." (Br. at 20.) However, Immunomedics is estopped from seeking that relief having represented to the Chancery Court – with full knowledge of the facts alleged in its Motion – that it "will not change the record date" or "postpone, adjourn, or otherwise delay" the Annual Meeting date.

Moreover, Immunomedics has forfeited its right to emergency injunctive relief by waiting too long to seek it. Plaintiff first raised the instant claims under Sections 13(d) and 14(a) of the Securities Exchange Act ("Exchange Act") in December 2016, in a prior Chancery Court proceeding. At that time, Plaintiff advised Vice Chancellor Laster that it had postponed the Annual Meeting from December 2016 to February 2017 in order to make corrective disclosures in response to venBio's proxy-related statements. AD ¶¶30-31, Ex. J. Yet Plaintiff waited until the week before the Annual Meeting, scheduled for this Friday (March 3), to file this Motion.

---

[3] Response and *Limited* Opposition by Immunomedics, Inc. and the Director Defendants to Plaintiff's Motion to Expedite at 9, *venBio Select Advisor LLC v. Goldenberg*, C.A. No. 2017-0108-JTL (Del. Ch. Feb. 15, 2017) (hereinafter, "Del. Ch. Opp.") (attached as Ex. N to AD).

[4] The Chancery Court has reserved a March 9, 2017 hearing date for venBio's motion for a temporary restraining order to enjoin the Seattle Genetics Transaction.

[5] Citations in the form "¶ _" refer to paragraphs from Immunomedics' Complaint.

3

As to its claims, Immunomedics also cannot meet the demanding standards for injunctive relief. Immunomedics's claims are legally flawed, and in any event, cannot serve as the basis for the remedies it seeks. Even assuming, contrary to fact, that venBio's Schedule 13Ds and proxy material disclosures were incomplete or incorrect, there is no irreparable harm because corrective disclosures already have been made. Moreover, the case law is clear that the "extraordinary remed[ies]" that Plaintiff seeks are extremely rare and "sparingly granted," *Atlas Corp. v. Blasius Indus., Inc.*, 705 F. Supp. 190, 192 (D. Del. 1988), *aff'd*, 865 F.2d 249 (3d Cir. 1988) – especially in the context of fights for corporate control.

Accordingly, the preliminary injunctive relief requested should be denied, the Annual Meeting should proceed on March 3, 2017, as scheduled, and this matter should continue on an ordinary trial schedule, which, among other things, would allow venBio to move to dismiss the claims asserted.

## STATEMENT OF FACTS

Plaintiff Immunomedics is a publicly traded biopharmaceutical company. Defendant venBio, an investment fund focused on innovation within the biotechnology sector, is currently the Company's largest shareholder, holding approximately 9.9% of the Company's outstanding shares. AD ¶2. On November 16, 2016, venBio filed a preliminary proxy statement with the U.S. Securities & Exchange Commission ("SEC") proposing an alternate slate of directors for election at the Annual Meeting, which was then scheduled to take place on December 14, 2016. AD ¶16.

Faced with the threat of removal, on November 28, 2016, less than two weeks after venBio launched its proxy contest, the Board abruptly announced its decision to postpone the Annual Meeting from December 14, 2016 until February 16, 2017, in direct (and admitted) response to venBio's proxy contest. AD ¶28.

4

After the Board announced that it had moved the Annual Meeting date, an individual shareholder filed suit in Delaware Chancery Court alleging that the incumbent directors breached their fiduciary duties because the postponement (1) violated the requirements of the Delaware General Corporation Law, and (2) undermined the shareholder franchise. Class Action Complaint at ¶¶ 8-10, *deSanctis v. Goldenberg*, C.A. No. 12981-VCL (Del. Ch. Dec. 13, 2016)

In opposing that suit, Immunomedics justified its actions, in part, by claiming that venBio had, *inter alia*, (1) violated Section 13(d) by filing its Schedule 13D over five months late; (2) violated Rule 14a-9 by making false statements about the character of the Company's Board members; and (3) staged a "shadow proxy contest" via undisclosed beneficial ownership groups. *See* Defendants' Brief in Opposition to Plaintiff's Motion to Expedite at 8-9, n.4, 20, *deSanctis v. Goldenberg*. Immunomedics asserts those same claims in this action, months later.

On February 9, 2017, Broadridge Financial Solutions, Inc. ("Broadridge"), the tabulating agent for voting at the Annual Meeting, reported that proxies for approximately 80% of the Company's outstanding shares had been submitted, with approximately 55% in favor of the venBio Nominees, making it highly probable that the venBio slate would prevail.[6] AD ¶37.

In a last-ditch effort to preserve their control, on Friday, February 10, 2017 – a mere four business days before the postponed Annual Meeting set for Thursday, February 16 – the Board announced the Seattle Genetics Transaction. AD ¶32. The Board used the transaction to justify a second postponement of the Annual Meeting, until March 3, 2017. venBio then filed a complaint in Delaware Chancery Court on Monday, February 13, 2017, challenging those actions. AD ¶35.

On February 15, 2017, Immunomedics represented to the Chancery Court that it

---

[6] As of February 17, 2017, when the Company filed this suit, Broadridge reported, after reconciling to remove double votes, that approximately 66% of the Company's outstanding shares had been voted, with approximately 55% in favor of venBio's nominees. AD ¶37.

5

"agree[d] to hold the annual meeting ... on March 3, 2017, agree[d] not to postpone, adjourn, or otherwise delay without Court approval, and agree[d] it will not change the record date." (Del. Ch. Opp. at 9; AD ¶36.)

On February 17, 2017, Immunomedics filed this suit and, on February 21, 2017, it filed the instant Motion, seeking, in effect, to overturn its concession to the Chancery Court.

## I. THE COURT SHOULD NOT AWARD EQUITABLE RELIEF TO IMMUNOMEDICS FOR ITS INEQUITABLE ACTIONS.

As a threshold matter, Plaintiff has acted inequitably in waiting to seek emergency relief until the eve of a twice-postponed Annual Meeting and in direct contravention of a binding commitment it made to the Delaware Chancery Court, which bars the relief it seeks. Moreover, the relief it seeks is improper.

### A. Laches Bars Injunctive Relief Here.

An "unexplained and unacceptable lapse of time is tantamount to laches and grounds for denial of the relief sought." *Birnbaum v. Blum*, 546 F. Supp. 1363, 1368 (S.D.N.Y. 1982); *see also New Era Publ'ns Int'l, ApS v. Henry Holt & Co.*, 873 F.2d 576, 584-85 (2d Cir. 1989).

As mentioned, Plaintiff raised the very claims it brings in this action in its defense to the *DeSanctis* shareholder suit in December 2016, but chose not to commence an action against venBio or its nominees at that time. *See* AD ¶¶30-31. Plaintiff's two-month delay, until a week before the twice-reset Annual Meeting, is inexcusable and forecloses its request for preliminary relief.[7] *See Plessey Co. plc v. Gen. Elec. Co. plc*, 628 F. Supp. 477, 500 (D. Del. 1986).

---

[7] In fact, Plaintiff has known of venBio's beneficial ownership of Immunomedics stock since August 2016, when venBio filed a Form 13F disclosing its 8% ownership stake. AD ¶6. As discussed below (at Section II(A)(1)), venBio was not required to file under Section 13(d) until November 2016 because it did not have the requisite intent to influence or control the issuer until that time. Nevertheless, if Plaintiff believed otherwise, it should have brought a claim long before the eve of the Annual Meeting. Plaintiff offers no excuse for its months of delay.

### B. Plaintiff Is Estopped from Seeking Relief Based on Representations It Made to the Delaware Chancery Court.

On February 15, 2017, Plaintiff represented to Vice Chancellor Laster in a judicial filing that it *would not* move the date of the Annual Meeting again and *would not* move the record date. AD ¶36. Notwithstanding that, Plaintiff now asks this Court relieve it of its representations by ordering venBio to either withdraw its request to the Chancery Court to maintain the March 3, 2017 meeting date or stipulate in this action to moving the meeting date to a date at least 30 days from the time venBio makes allegedly required "corrective disclosures." (Br. at 20.)

Judicial estoppel focuses on a "party's relationship with the Court, the judiciary's reliance on positions asserted and the integrity of the judicial system." *Samick Music Corp. v. Del. Music Indus.*, Civ. A. No. 91-23-CMW, 1992 WL 200882, at *3 (D. Del. Aug. 3, 1992). Judicial estoppel is "intended to prevent parties from playing fast and loose with the courts by asserting" positions inconsistent with those they "previously asserted in a judicial proceeding." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996). Courts employ this doctrine to stop litigants from "chang[ing] a characterization of the facts" and legal positions "to later gain an advantage." *Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 899 (D. Del. 1991); *Samick*, 1992 WL 200882, at*3. That is precisely what happened here.

Plaintiff told both venBio and the Chancery Court that it would not move the current record and Annual Meeting dates, venBio relied on that representations to the Chancery Court, and Plaintiff is now trying to change its position "to gain an advantage," exactly what the estoppel doctrine prohibits. If Plaintiff truly believed that the record date and Annual Meeting dates needed to be postponed, Plaintiff should have raised that issue with Vice Chancellor Laster. Instead, Plaintiff agreed *not* to adjourn those dates and asks this Court to overturn that agreement. Accordingly, Plaintiff is estopped from seeking its requested relief here.

### C. Plaintiff's Other Requested Injunctive Relief Is Entirely Unwarranted.

Plaintiff also asks the Court to invalidate proxies voted for the venBio Nominees, an extreme remedy that would disenfranchise Immunomedics shareholders. As the Second Circuit has explained, injunctions preventing defendants from voting at an annual shareholder meeting as a remedy for allegedly belated disclosures are almost always improper. *See Treadway Cos., Inc. v. Care Corp.*, 638 F.2d 357, 380 (2d Cir. 1980). This Court too has found that, because preliminary injunctive relief is a drastic remedy, enjoining a shareholder vote is a necessarily rare form of relief. *D&N Fin. Corp. v. RCM Partners Ltd. P'ship*, 735 F. Supp. 1242, 1253 (D. Del. 1990); *Energy Ventures, Inc. v. Appalachian Co.*, 587 F. Supp. 734, 743 (D. Del. 1984). Rather, the correct way to handle allegations of disclosure violations is to hold a full and fair hearing after the vote. In that event, *if* the Court finds disclosure violations, it can *then* "set aside a stockholder vote and require both a new solicitation of proxies and a second stockholder vote." *D&N*, 735 F. Supp. at 1253; *see also Bertoglio v. Tex. Int'l Co.*, 472 F. Supp. 1017, 1023 (D. Del. 1979). That course should be followed here.

## II. PLAINTIFF FAILS TO MEET THE PRELIMINARY INJUNCTION STANDARD

To obtain a preliminary injunction, Plaintiff must show "(1) a reasonable probability of eventual success in the litigation[,] and (2) that the movant will be irreparably injured ... if relief is not granted." *Eli Lilly & Co. v. Premo Pharm. Labs., Inc.*, 630 F.2d 120, 136 (3d Cir. 1980). The court also may take into account "the possibility of harm to other interested persons" and "the public interest." *Id.* Here, Plaintiff fails to meet this heavy burden.

Plaintiff has no reasonable probability of success. Plaintiff also cannot show that it has been or will be irreparably harmed absent the Court's intervention because each of the allegedly defective disclosures already has been corrected in the market. *See* AD ¶27. Moreover, it is in the best interests of third-party shareholders and the public interest to deny Plaintiff the relief it

seeks here, and hold the election on March 3, 2017, as scheduled. Further delaying the Annual Meeting and taking from the Company's non-party shareholders their right to vote on the future of the Company will seriously harm their franchise right – particularly where they already have full and complete information. The Court therefore should deny Plaintiff's Motion in its entirety.

### A. PLAINTIFF HAS NO REASONABLE PROBABILITY OF SUCCESS ON ITS SECTIONS 13(d) AND 14(a) CLAIMS.

Plaintiff alleges that venBio did not timely disclose its beneficial ownership of Immunomedics stock and its purported "group" memberships as required by Section 13(d). Plaintiff also alleges proxy solicitation violations. Those arguments rest on fundamental misapplications of the law and have no reasonable probability of success.[8]

#### 1. venBio Filed its Schedule 13D On Time.

Plaintiff alleges that venBio should have filed its Schedule 13D before November 16, 2016, and that its failure to do so violated Section 13(d) of the Exchange Act. This allegation depends on a misreading of Rule 13d-1. Rule 13d-1 requires an investor who acquires at least 5% of a class of stock, with the intent to change or influence control of the corporation, to file a Schedule 13D with the SEC within 10 days. Since venBio only had the requisite intent on November 11, 2016, its November 16, 2016 Schedule 13D filing was timely.

This Court has made clear that "[i]f an investment adviser has acquired securities of a corporation in the ordinary course of business, and not with the purpose nor with the effect of changing or influencing the control of the corporation, then it need not file a Schedule 13D." *Jacobs v. Pabst Brewing Co.*, 549 F. Supp. 1050, 1063 (D. Del. 1982). "[S]ection 13(d) does not require disclosure of preliminary considerations, exploratory work or tentative plans." *SEC v. Teo*, 746 F.3d 90, 99-100 (3d Cir. 2014) (quotations omitted). On the other hand, "engag[ing]

---

[8] None of Scott Canute, Peter Barton Hutt, or Khalid Islam own Immunomedics shares. As such, they cannot violate Section 13(d), which is only triggered by 5% beneficial ownership of equity securities.

with [an] issuer's management on matters that specifically call for the sale of the issuer to another company, the sale of a significant amount of the issuer's assets, the restructuring of the issuer, or a contested election of directors" do trigger 13D filing requirements.[9]

Prior to November 2016, venBio held Immunomedics stock, as it disclosed (*see* AD ¶6, Ex. A), but it was a passive investor in accordance with its typical investment strategy – *i.e.*, precisely the type of investor that the SEC excused from burdensome disclosure requirements under Section 13(d). *See Rosen v. Brookhaven Capital Mgmt. Co., Ltd.*, 113 F. Supp. 2d 615, 622 (S.D.N.Y. 2000). While venBio held "discuss[ions] with [Immunomedics's] management" by June 2016, it had no "specific plans" to nominate a slate for election to the Board or to affect corporate control at that time. *Id.* at 631; AD ¶5. Indeed, notwithstanding its prior meetings with venBio, Plaintiff offers no allegations or evidence that at any time before November 2016 venBio intended to affect corporate control.

### 2. There Are No Undisclosed Groups.

Plaintiff attempts to expand venBio's Section 13 disclosure obligations by claiming that venBio was a member of various "groups" of Immunomedics shareholders. Those claims are baseless, as they ignore both the fundamental concept as to what constitutes a "group" under Section 13(d) and the broad latitude that the SEC provides to shareholder communications in connection with a proxy contest without triggering group liability.

Pursuant to Section 13, shareholders constitute a "group" only where "two or more persons *agree* to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer." 17 C.F.R. §240.13d-5(b)(1) (emphasis added); *see also Rosenberg v. XM Ventures*, 129 F. Supp. 2d 681, 686 (D. Del. 2001) ("[A] group is formed when its members

---

[9] SEC Compliance & Disclosure Interpretation, Exchange Act Sections 13(d) and 13(g) and Regulation 13D-G Beneficial Ownership Reporting (July 14, 2016), https://www.sec.gov/divisions/corpfin/guidance/reg13d-interp.htm.

10

have ... agreed to act together to acquire, hold, vote or dispose of securities of an issuer."), *aff'd*, 274 F.3d 137 (3d Cir. 2001). With regard to proxy contests, the SEC has stated clearly that typical proxy solicitation does not constitute group conduct: "the Commission believes that a shareholder who is a passive recipient of soliciting activities, without more, would not be deemed a member of a group under Rule 13d-5(b)(1) with persons conducting the solicitation." *See* SEC Release No. 34-39538, 1998 WL 7449, at *10 (Jan. 12, 1998). Further, the SEC has explained that no group is formed "even where the soliciting activities result in the shareholder granting a revocable proxy." *Id.* Thus, the mere solicitation and receipt of proxies is legally insufficient to form the basis of a group under Section 13(d). Plaintiff alleges nothing more.

Plaintiff's assertions regarding OrbiMed and venBio's interactions on the message board amount to nothing more than permitted shareholder solicitations during a proxy contest and, in any event, are untimely and wrong. *See* AD ¶20, 24..[10]

### 3. venBio did not Improperly Fail to File Solicitation Materials.

Plaintiff incorrectly claims that venBio violated Section 14(a) when it allegedly solicited proxies from OrbiMed and retail investors who used the message board, but failed to file those "soliciting materials" with the SEC. "[D]iscussions between [defendant] and other shareholders opposed to the transaction in question" are not "substantial enough to trigger the filing requirements of the Williams Act" or "the proxy regulations." *Scott*, 386 F. Supp. at 73. In fact, in a 2008 release, the SEC encouraged such discussions:

---

[10] The only allegations tying venBio to the retail investors are in paragraphs 39 and 40 of the Complaint, which relate to one phone conversation and one email exchanged between a single message board user and Dr. Aghazadeh, which that user independently relayed back to other shareholders on the message board. (¶ 29.) Those allegations come nowhere close to what is required to establish the existence of a group under Section 13(d). *See Scott v. Multi-Amp Corp.*, 386 F. Supp. 44, 72 (D.N.J. 1974) ("telephone calls reflect little more than that concerned shareholders were communicating with [venBio] to ascertain its views as a [roughly] 10% Shareholder"); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 616 (2d Cir. 2002) (holding that "evidence of meetings and other communications among the defendants ..., as well as evidence that [the company] was discussed in these communications" is not enough to establish an agreement to act together to form a group).

> By facilitating such communications on the Internet among shareholders, and between shareholders and their companies, we hope to tap the potential of technology to better vindicate shareholders' state law rights, including their right to elect directors, in ways that are potentially both more effective and less expensive for shareholders and companies.

SEC Release No. 34-57172 (Jan. 18, 2008).

At most, Plaintiff alleges that venBio had discussions with OrbiMed, as well as with a message board user, in January 2017 about Immunomedics's management and venBio's plans for the Company. Those types of discussions are encouraged, expected, and typical among shareholders and are not proxy solicitations. *Scott*, 386 F. Supp. at 73. Tellingly, Plaintiff has raised these issues with the SEC, but the SEC has not required any corrective measures. AD ¶26.

### 4. venBio Did Not Make False or Misleading Statements in Proxy Materials.

Under Rule 14a-9,[11] Plaintiff must show that Defendants had "no reasonable basis for their [purportedly misleading] characterization[s]." *Capital Real Estate Investors Tax Exempt Fund Ltd. P'ship v. Schwartzberg*, 929 F. Supp. 105, 115 (S.D.N.Y. 1996). Immunomedics fails to meet its burden here: all of venBio's statements were solidly grounded in fact.

*First,* Plaintiff complains that venBio's statements about incumbent Board members are false, but offers no explanation as to why. That is because venBio has a reasonable factual basis for its statements about the Board members and their conflicts of interest, self-dealing, and other improper conduct. For example, venBio's statements as to the Board's conflicts of interests are supported by concrete evidence, such as the lucrative royalty provisions of Goldenberg's employment contract, and the fact that over the past 16 years, while Immunomedics stock

---

[11] Rule 14-a9(a) provides: "No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

steadily declined, husband and wife Sullivan and Goldenberg were paid an astonishing amount, roughly equivalent to 15% of the Company's current market capitalization. *See* AD ¶¶3, 8-11.

*Second*, Plaintiff takes issue with venBio's statement that it was "unprecedented" that all three of the leading proxy advisory firms (ISS, Glass Lewis, and Egan-Jones) supported venBio's full slate of nominees. (¶ 50.) But it is true that all three firms support venBio's full slate, and it is also true that such a strong endorsement from all three firms is, at a minimum, extremely rare.[12] None of the supposed counter-examples provided by Plaintiff is to the contrary. Moreover, it is the proxy firms' recommendations, not venBio's statement about how their opinions were "unprecedented," that matter to a reasonable investor, rendering the statement "inactionable corporate puffery." *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030 (LAP), 2010 WL 1924719 at *10 (S.D.N.Y. May 11, 2010).

*Finally*, Plaintiff claims that venBio violated rule 14a-9 when it made statements as to the likely outcome of the director election, asserting that venBio "claimed to know the results of the upcoming Immunomedics stockholder election before it happened." (¶ 53.) However, Plaintiff points only to statements indicating the incumbent Board's "likely defeat" and referencing "venBio's Lead in the Stockholder Vote." (*Id.*) Those statements are not actionable as Section 14(a) misstatements because they are forward-looking statements of opinion. *See Mgmt. Assistance Inc. v. Edelman*, 584 F. Supp. 1016, 1020 (S.D.N.Y. 1984); *see also Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 449 F. Supp. 951, 960 (S.D.N.Y. 1978) (same). They also are solidly based on fact, including interim voting results provided by Broadridge (AD ¶37), and are unlikely to confuse any shareholder. As one court explained when rejecting a similar claim, the prediction of victory at a press conference is "an expectable exclamation of confidence

---

[12] In light of space limitations, venBio is unable to address with greater detail the merits of this and many other allegations. venBio would be pleased to provide supplemental information on this and any other topic, should the Court so desire.

13

[that] would not divert a reasonable shareholder from the task of coolly determining how best to vote his shares in light of the opposing platforms." *Kennecott*, 449 F. Supp. at 960-61.

### B. PLAINTIFF HAS FAILED TO SHOW IRREPARABLE HARM.

Plaintiff also cannot satisfy the second fundamental requirement for preliminary injunctive relief: irreparable harm.

By December 2016, over two months before the Annual Meeting date in March 2017, venBio's entire economic position in Immunomedics, the existence of its proxy fight, venBio's discussions with other stockholders, and Immunomedics's view that venBio's previous disclosures were inadequate all had been fully disclosed and disseminated in the public marketplace. *See, e.g.*, AD ¶18. The proxy battle has been the subject of numerous proxy statements filed with the SEC by both parties – with venBio filing 17 proxy solicitations and Immunomedics filing 36 proxy solicitations since November 16, 2016. AD ¶25. The proxy contest also has received significant news coverage.

Thus, Immunomedics's shareholders have received all the competing information from management and venBio, and there is therefore "no risk of irreparable injury and no basis for injunctive relief." *Treadway*, 638 F.2d at 380; *see also Energy Ventures*, 587 F. Supp. at 743.[13]

### C. The Balance of Equities and Public Interest Favor No Injunctive Relief

Finally, the balance of equities tips in favor of denying Plaintiff's motion because any

---

[13] The cases cited by Plaintiff are not to the contrary. None of those cases presented the situation like the one at bar where the plaintiff waited months to seek injunctive relief, and then filed suit the week before the scheduled election. Moreover, many of the cited cases involve tender offers and mergers, rather than contested shareholder elections, which pose very different implications for effective remedies. *See, e.g., Polaroid Corp. v. Disney*, 862 F.2d 987 (3d Cir. 1988) (corporation moved to enjoin bidder's tender offer); *MONY Group, Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138 (2d Cir. 2004) (corporation moved to enjoin shareholders from soliciting votes against a proposed merger). In the tender offer and mergers context, once the transaction is consummated and the target company is integrated into the acquiring company, there is no ability for the court to award effective relief. By contrast, as set forth above, when shareholders vote to elect directors, a court "possesses the power to set aside a stockholder vote and require both a new solicitation of proxies and a second stockholder vote." *D&N*, 735 F. Supp. at 1253-54 (citation and quotation marks omitted).

harm that Plaintiff would suffer without injunctive relief is far outweighed by the harm to "other interested persons" or "the public interest." *D&N*, 735 F. Supp. at 1253. Another delay of the Annual Meeting – particularly at a time the Board is considering a transformative joint venture with Seattle Genetics – severely injures the right of non-party shareholders to vote for the directors of their choosing. *See id.* ("[i]n view of the clear purpose of the federal securities laws, ... an injunction would harm the public interest ... which [the Exchange Act] seeks to promote, i.e., fair corporate suffrage"); *Int'l Banknote Co., Inc. v. Muller*, 713 F. Supp. 612, 623 (S.D.N.Y. 1989) (finding that "corporate management subjects shareholders to irreparable harm by denying them the right to vote their shares or unnecessarily frustrating them in their attempt to obtain representation on the board of directors"); see also *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58 (1975).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion for a Motion for a Temporary Restraining Order and Preliminary Injunction.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

| | |
|---|---|
| SCHULTE ROTH & ZABEL LLP | */s/ David J. Teklits* |
| Michael E. Swartz | David J. Teklits (#3221) |
| Kristie M. Blase | Kevin M. Coen (#4775) |
| Abigail F. Coster | Alexandra M. Cumings (#6146) |
| 919 Third Avenue | 1201 N. Market Street |
| New York, New York 10022 | P.O. Box 1347 |
| | dteklits@mnat.com |
| | kcoen@mnat.com |
| February 27, 2017 | acumings@mnat.com |
| | Wilmington, Delaware 19899-1347 |
| | *Counsel for Defendant venBio Select Advisor LLC* |