IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IMMUNOMEDICS, INC.,  :
          Plaintiff,  :
          v.  :   Civil Action No. 17-176-LPS
VENBIO SELECT ADVISOR LLC, :
BEHZAD AGHAZADEH, SCOTT :
CANUTE, PETER BARTON HUTT, :
AND KHALID ISLAM, :
          Defendants. :

**MEMORANDUM ORDER**

Before the Court is Plaintiff Immunomedics, Inc.'s ("Plaintiff" or "Immunomedics" or the "Company") Motion for a Temporary Restraining Order and Preliminary Injunction. (D.I. 4) Having reviewed the parties' briefing (D.I. 5, 6, 8, 9, 18), heard argument by teleconference, and having moved expeditiously to consider Plaintiff's request for extraordinary relief in light of the circumstances,[1] **IT IS HEREBY ORDERED THAT** Plaintiff's Motion (D.I. 4) is **DENIED**.

1.   A preliminary injunction or temporary restraining order is an "extraordinary remedy" that should be granted only in "limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). This type of remedy is available only when the petitioner establishes: (1) a likelihood of success on the merits; (2) irreparable harm if the

---

[1] Plaintiff initiated this case on February 17, 2017 and filed the present motion on February 21, 2017, just 10 days before its scheduled and already twice-delayed 2016 annual meeting ("Annual Meeting"). On February 23, 2017, the Court ordered expedited briefing on the motion, which was completed on the morning of February 28, 2017. Later that same day, the Court held a lengthy teleconference to hear argument from the parties.

1

injunction is denied; (3) the balance of the equities tips in the movant's favor; and (4) the public interest favors the requested relief. *See id.*; *see also P.C. Yonkers, Inc. v. Celebrations, the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) (holding that burden lies with moving party to establish every element in its favor).

2. Before addressing application of the traditional four factors, the Court considers two preliminary barriers venBio Select Advisor LLC ("Defendant" or "venBio") posits should preclude Plaintiff from obtaining its requested relief. First, Defendant contends that Plaintiff has moved too slowly in seeking relief from this Court, making laches an independent basis for denying the Motion. Second, Defendant asserts that Plaintiff is "playing fast and loose" with this Court and the Delaware Court of Chancery, so Plaintiff should be estopped from seeking the requested relief. Under the totality of circumstances here, the Court does not view either laches or estoppel as sufficient bases on which to deny the Motion. However, the concerns underlying these doctrines, including delay and treating courts appropriately, are pertinent to the Court's analysis of the traditional four factors. As further discussed below, the Court finds that the timing with which Plaintiff filed its Motion cuts against its showing of irreparable harm, and the Court's concern with what Plaintiff told – and did not tell – the Vice Chancellor weighs against its showing that the relief sought is in the public interest.

3. Turning to the four-factor test, the Court first finds that Plaintiff has failed to demonstrate a likelihood of success on the merits. Plaintiff raises three claims of alleged violations of the Securities Exchange Act ("Exchange Act"): (1) under Securities and Exchange Commission ("SEC") Rule 14a-9, Plaintiff claims venBio published misleading and unlawful proxy solicitation materials by (a) misreporting early results of the proxy contest and

(b) attacking the integrity of Immunomedics' current Board of Directors; (2) under SEC Rule 14a-6, Plaintiff alleges venBio failed to file with the SEC certain soliciting materials, namely written communication with an Immunomedics stockholder and solicitations of members of an online message board; and (3) under SEC Rule 13(d), Plaintiff claims venBio failed to file a timely Schedule 13D and failed to disclose the existence of members of its proxy solicitation group.

For all but one of these claims, which is discussed further below, Plaintiff has failed to provide any evidence, or any persuasive argument, to overcome venBio's evidence and representations, specifically that: any statement about Immunomedics' integrity was sufficiently well-grounded in fact; Defendant had no obligation to file solicitation materials with the SEC, as any discussions it had with other shareholders were not substantial enough to trigger the requirements of the Exchange Act; and Defendant complied with Section 13(d), as no undisclosed groups existed, and as it filed its Schedule 13D within 10 days after acquiring both the requisite amount of stock and the intent to change or influence control of the corporation.

Plaintiff's sole remaining claim rests on venBio's issuance of a February 14, 2017 press release, which included the following:

> We believe the [Seattle Genetics] deal Immunomedics' current Board and management announced only four business days before the Annual Meeting vote was motivated by a desire to entrench themselves and rush to announce an agreement before they lost the vote and their Board seats – not a true, carefully considered desire to do what was in the best interests of all stockholders. This is supported by the fact that as of the day before the deal announcement, venBio's lead in the shareholder vote was becoming increasingly clear – with 80% of outstanding shares submitted and 55% cast in favor of venBio's nominees.

(D.I. 6 at 88, February 14, 2017 Press Release) Plaintiff alleges that this statement violates SEC Rule 14a-9, 17 C.F.R. § 240.14a-9(a), which prohibits false or misleading statements in any proxy statement. Plaintiff argues the Rule was violated because Defendant published early results and because Defendant misrepresented those results. Plaintiff emphasizes that Defendant's purported offense falls within the scope of an example contained in the Note following the Rule, which states that possible misleading statements include "claims made prior to a meeting regarding the results of a solicitation." *Id.* at Note d. Plaintiff has not shown a likelihood of success on the merits of this claim.

While Plaintiff blames venBio for misreporting the results, the evidence is that venBio merely reported the data reported to it by Immunomedics' agent. At the time the results were reported, neither venBio nor Plaintiff knew that the data relied on was incorrect.[2] Further, the Note on which Plaintiff bases its argument states that the listed examples may be misleading within the meaning of Rule 14a-9 "depending upon particular facts and circumstances." Here, the "particular facts and circumstances" in which venBio made its statement include: (1) Plaintiff's recent announcement of a partnership deal with Seattle Genetics, Inc. ("Seattle Genetics") and (2) venBio's filing of a motion for injunction in the Delaware Court of Chancery. In this full context, venBio's press release was not a solicitation for a vote and was not intended to convey – nor likely to be understood by shareholders as conveying – that the result of the pending vote was a foregone conclusion. In context, the press release is a criticism of the Seattle

---

[2] These statistics were reported to both parties by Broadridge Financial Solutions, Inc., Immunomedics' tabulating agent. The parties agree that these results were misreported and that, after removing double votes, Broadridge revised its report to be that approximately 66% of the Company's outstanding shares had been voted, with approximately 55% in favor of venBio's nominees.

4

Genetics deal and a defense of venBio's litigation. Thus, Plaintiff has failed to show a likelihood that it will prove that venBio's press release, when appropriately viewed in full context, was materially false and misleading.[3]

4. With respect to the second factor, Plaintiff asserts that irreparable injury is presumed if there is a violation of federal proxy rules. As authority for this proposition, Plaintiff cites *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1150 (D. Kan. 2001). But *Lone Star* states that a party "cannot prove irreparable harm merely by showing a material false solicitation." *Id.* Moreover, the Supreme Court has stated that "the questions of liability and relief are separate in private actions under the securities laws [and] the latter is to be determined according to traditional principles." *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 64 (1975). Therefore, even if Plaintiff had demonstrated a likelihood of success on the merits – which it has not – Plaintiff would need additionally to show irreparable harm to warrant relief. Plaintiff has failed to make this showing.

Plaintiff argues that extraordinary relief is warranted here because if the Annual Meeting goes forward and a change of control results, "an irreparable scrambling of the eggs will transpire," making it difficult for the Court to "unscramble the eggs" and put the proper Board back in place. (D.I. 5 at 18) Plaintiff suggests that neither monetary damages nor post-vote relief

---

[3]*See generally Management Assistance Inc. v. Edelman*, 584 F. Supp. 1016, 1020 (S.D.N.Y. 1984) (finding statements that certain shareholder "would be able to obtain proxies from only 28 percent" of shareholders, and that opposing management group "would win the proxy contest," was not actionable because it did not create impression that shareholder election was foregone conclusion); *Jewelcor Incorporated v. Pearlman*, 397 F. Supp. 221, 242, 249 (S.D.N.Y. 1975) (finding proxy solicitation statement – that 61 percent of shareholders had voted for proposal, when no vote had actually been taken – was insufficient to establish violation of section 14(a) and was not materially misleading in light of surrounding context).

can be considered as fully remedial relief where, as here, the Court has the ability to prevent the harm pre-vote. *See Lone Star*, 148 F. Supp. 2d at 1150.

The Court finds that Plaintiff has not met its burden on irreparable harm. Should the Annual Meeting go forward and the venBio nominees replace the current Board, and should Plaintiff subsequently prove the election results were tainted, the Court can exercise its equitable power to void the results of the Annual Meeting (should such action be warranted based on a full record). *See Bertoglio v. Texas Intern. Co.*, 472 F. Supp. 1017, 1021 (D. Del. 1979) ("[I]t is well within the equitable power of the Court to void the results of a shareholders' vote and require both a new solicitation of proxies and a second shareholder vote."). Granting an injunction here, simply because the Court *can* prevent the vote from taking place, would risk transforming the extraordinary relief of a preliminary injunction and temporary restraining order into something easily and regularly obtained. *See Silberstein v. Aetna, Inc.*, 2014 WL 1388790, at *5 (S.D.N.Y. Apr. 9, 2014); *see also Stein v. 1-800-Flowers.com, Inc.*, 2016 WL 8230128, at *3 (E.D.N.Y. Dec. 2, 2016).

Additionally, the timing with which Plaintiff has sought relief undermines its showing of irreparable harm. Plaintiff knew of venBio's alleged violations of federal securities laws as far back as August of 2016. In December 2016, Plaintiff articulated many of the same claims asserted in this action as part of its defense to an action brought by an individual shareholder in the Delaware Court of Chancery. Further, Plaintiff appeared to be content to let these disputes play out in a separate litigation with venBio in the Delaware Court of Chancery until February 17, 2017, just two weeks before its already twice-delayed Annual Meeting. Under these circumstances, the pace with which Plaintiff has moved raises reason to doubt that the harm it

6

claims to fear will be irreparable in the absence of immediate judicial relief.

5. The balance of harms also weighs against Plaintiff. The harm to venBio and the other shareholders from delaying the Annual Meeting yet again outweighs the harm to Plaintiff from allowing the vote to go forward based on the information presently before the shareholders.

Plaintiff repeatedly stated during the hearing that its Motion is about the shareholders and protecting their right to vote. The Court agrees – but further agrees with Defendant that these concerns disfavor the relief sought by Plaintiff. A further delay of the shareholders' opportunity to vote – in the face of allegations of entrenchment by the current Board, in light of evidence that a large majority of the shareholders appears to wish to replace the Board, and under the totality of circumstances evident from the record – risks weakening or even effectively nullifying the value of the shareholder franchise in this case. On the other side of the balance, Plaintiff has not proven that it will be harmed in the absence of relief. Allowing the Annual Meeting to go forward, on the date for which it has been scheduled since February 10, 2017, and allowing the Company's shareholders to cast their votes, will leave Plaintiff with directors of the shareholders' choosing, directors who (whatever their identity) will be bound to exercise their fiduciary duties on behalf of the Company.[4] *See generally Elgin Nat. Industries, Inc. v. Chemetron Corp.*, 299 F. Supp. 367 (D. Del. 1969) (denying preliminary injunction to postpone annual shareholders meeting based on, among other things, finding that "if the meeting is held and the proposals of the management carried and the Court finds on final hearing that the

---

[4] The Court has been provided no basis on which to doubt that venBio's slate of directors, if elected at the Annual Meeting, would violate their fiduciary duties, including in their review of the Seattle Genetics deal and in evaluating whether to continue to pursue the instant litigation (the subject of a letter to the Court filed by Plaintiff last night (D.I. 19)).

management proxies were improperly solicited and voted the situation would be within the power of the Court to cure in some manner").

6. Finally, the Court finds that the last factor, the public interest, also disfavors granting Plaintiff's Motion. The public's interest in preserving the integrity of shareholder voting rights, in the context of this case, favors holding the already twice-delayed Annual Meeting tomorrow, as scheduled, rather than further delaying the vote. This finding is supported by the undisputed fact that Immunomedics is in violation of 8 Del. C. Ann. § 211(c), a state law governing the timing of annual shareholder meetings, and will remain in violation until the Annual Meeting occurs.

A further factor here is the Court's lingering concerns as to the representations Plaintiff made to the Court of Chancery. There, in opposing a motion for preliminary injunction filed by venBio, Plaintiff represented to the Vice Chancellor that Plaintiff agreed "not to postpone, adjourn, or otherwise delay [the Annual Meeting] without Court approval," a representation that could have well been understood by the Vice Chancellor, venBio, Immunomedics' shareholders, and/or the public as meaning that Plaintiff would not seek to (yet again) delay the Annual Meeting without first seeking approval of the *Court of Chancery*, the only court that – at the time of the representation – had possession of disputes relating to the timing of the meeting. Yet, mere hours later, without any prior notice to either the Vice Chancellor or venBio, Plaintiff filed its action in this Court, seeking as possible relief an order *of this Court* to delay the Annual Meeting. While the Court is not holding that Plaintiff is estopped from seeking relief in this Court, the Court's concerns with how Plaintiff has treated the state and federal courts in connection with the timing of its Annual Meeting is yet another reason the public interest does

8

not favor granting Plaintiff its requested relief.[5]

Accordingly, for the reasons stated above, Plaintiff's Motion is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall submit a joint status report no later than **March 15, 2017**.

March 2, 2017　　　　　　　　　　　　　HONORABLE LEONARD P. STARK
Wilmington, Delaware　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[5]This Court is not in a position to evaluate whether the Vice Chancellor was actually misled by Immunomedics. Nor is this Court making a finding that Immunomedics had any intent to mislead the Court of Chancery. The litigations in both the Court of Chancery and here are moving quickly and Immunomedics may have had valid, strategic reasons not to disclose its plans. Nonetheless, it is Plaintiff who is asking this Court to move quickly, and in doing so the Court views it as appropriate to weigh the concerns articulated above against Plaintiff.